## UEBERSEE FINANZ–KORPORATION, A. G. v. CLARK, Atty. Gen.

### No. 26453.

United States District Court
District of Columbia, Civil Division.

Feb. 21, 1949.

Gallagher, Connor, Boland and Ingoldsby and Michael J. Kenny, all of Washington, D. C., for plaintiff.

John L. Burling, Myron C. Baum, Joseph Laufer, and E. Ernest Goldstein, all of Washington, D. C., for defendant.

LAWS, Chief Judge.

This suit was brought by plaintiff, a corporation of Switzerland, the controlling stock of which is claimed to be beneficially owned by Fritz von Opel, a citizen of Liechtenstein, to recover shares of stock of American corporations vested by the Alien Property Custodian as enemy owned property. The principal issue is whether as of the time of vesting in June and July 1942, the stock was owned or controlled by Fritz von Opel, a neutral, or by his parents, Wilhelm and Marta von Opel, citizens of Germany and "enemies" within the provisions of the Trading with the Enemy Act.[1]

It is agreed that on and before October 5, 1931, Wilhelm and Marta von Opel owned 600 shares of stock of Adam Opel, A.G., a German corporation, and that since 1929 such shares were deposited in the United States subject to an option agreement providing for their sale to General Motors Corporation for a specified sum in German reichsmarks.

Plaintiff claims that by a gift agreement executed on October 5, 1931, Wilhelm and Marta von Opel transferred their ownership in the shares of stock of Adam Opel,

---

[1] Title 50 U.S.C.A.Appendix, § 1 et seq.

A.G. to their son, Fritz von Opel, and that in November, 1931, Fritz von Opel sold the stock to General Motors Corporation pursuant to the option. In the transaction he arranged to be paid in American rather than German currency. From the funds received, Fritz von Opel acquired plaintiff corporation. Later the American securities now held by defendant were purchased by plaintiff corporation. From 1932 until the time the American securities were vested pursuant to provisions of the Trading with the Enemy Act, it is claimed Fritz von Opel owned 97 per cent of the shares of plaintiff corporation and through this ownership exercised control over the American securities. On November 21, 1939, Fritz von Opel became a citizen of Liechtenstein, which at all times during World War II was a neutral country. Any ownership or control of the American securities or any interest in them by Wilhelm or Marta von Opel as of the time the securities were vested, is denied. The agreement of October 5, 1931, indicated retention by the Opel parents of an interest in the Opel stock and any securities purchased by funds received from its sale, by way of what is known as a usufruct or "niessbrauch" under German law. However, plaintiff claims such interest did not legally arise because of omission of words of assignment in the agreement and failure to deliver possession or co-possession to his parents of the property covered by the agreement. Moreover, it is plaintiff's claim that in 1935, a discussion was had by Wilhelm and Marta von Opel with their then attorney, Dr. Gros, with regard to any possible interest they might have in the property referred to in the agreement of October 5, 1931, and at that time Wilhelm and Marta von Opel orally waived such interest. Plaintiff, therefore, claims that if the Court should find any interest in the American securities existed in favor of Wilhelm or Marta von Opel previous to and at this time in 1935, it was effectively relinquished and surrendered, according to the laws of Germany, by the oral waiver.

The defendant makes a number of alternative claims in opposition to the return of the vested securities. First, it maintains the agreement dated October 5, 1931, re- lied on by plaintiff as having divested Wilhelm and Marta von Opel of their interest in the Opel stock and properties realized from any sale of the stock, was void because it was not executed on the date it bore, but at a time in November, 1931, following sale of the Opel stock in the United States for American currency. It is contended the plan of Wilhelm von Opel was to make it appear that Fritz von Opel, who for several years had been a non-resident of Germany, known in German as a "devisen auslander", was the owner of the stock at the time it was sold in the United States, in which event it would be permissible, under Germany's foreign exchange laws, to receive payment in American currency, instead of in German reichsmarks. If the property was owned by Wilhelm von Opel or his wife, citizens and residents of Germany, known in that country as "devisen inlanders", the sale would be subject to Germany's foreign exchange laws. Passage of more stringent laws and regulations restricting sales of German property for foreign exchange were considered imminent in Germany about this time. That there was not believed to be sufficient time on or about October 5, 1931, to complete a satisfactory agreement transferring title to Fritz von Opel before new laws and regulations were adopted. For this reason only a preliminary draft of the gift agreement was made at or about October 5, 1931, the actual execution of the agreement having occurred in November 1931, after the sale of the Adam Opel, A.G., stock in America and Fritz von Opel's return to Germany. To make the sale of stock in America for American currency appear to have been made by Fritz von Opel, a devisen auslander, the gift agreement was pre-dated October 5, 1931.

Defendant maintains further, that regardless of whether the agreement was executed in October or November, 1931, it was not a bona fide transaction, but was in all respects a sham adopted by the parents as a means of making it possible, from a sale of assets outside of Germany, to obtain gold or American securities without apparently violating the exchange laws and regulations of Germany. By reason of such a sham transaction, defendant claims

the agreement was void and Wilhelm and Marta von Opel continued to have complete ownership and control of the American securities sought to be recovered by this suit.

If the Court does not accept the claim of complete ownership by Wilhelm and Marta von Opel in the vested American securities, defendant contends the evidence establishes at the least that they held a substantial part ownership in the securities. It is conceded that the gift agreement itself, if found to be valid, did not effectually create in favor of Wilhelm and Marta von Opel a usufructuary interest in the property mentioned. However, defendant asserts such an interest came into existence at a later time, when delivery was made of the controlling shares of stock of plaintiff corporation to one Hans Frankenberg, who was then acting as agent for Wilhelm and Marta von Opel. It is maintained this was an in rem interest, according to the laws of Germany. Defendant makes an alternative claim of limited ownership, to the effect that if the Court should find a usufructuary interest in the property did not arise in favor of Wilhelm and Marta von Opel, as last hereinbefore asserted, nevertheless Wilhelm and Marta von Opel by the agreement dated October 5, 1931, obtained a right at any time to assert a claim in personam against Fritz von Opel for the creation of an in rem interest in the property mentioned in the gift agreement.

Defendant's position with respect to any type of ownership the Court may find Wilhelm and Marta von Opel held in the American securities is that the evidence establishes there was not in fact a waiver or surrender of such ownership in 1935, or at any other time, but that their ownership continued in full effect until the Alien Property Custodian vested the American securities. The defendant also maintains that under German law a waiver of ownership in the property, if made, would be void unless a license was obtained and one was not obtained.

In the event the Court does not agree with any of the foregoing defenses, defendant makes two other points which it submits should result in judgment against plaintiff. First, that the plaintiff corporation itself is an "enemy", within the definition of Section 2 of the Trading with the Enemy Act, in that it is incorporated within a country other than the United States and during the time the United States was at war, was doing business within the territory of a nation with which the United States was at war. Second, defendant maintains that while it concedes Fritz von Opel is a naturalized citizen of a neutral country of Liechtenstein, nevertheless he still is a German national, within the meaning of Section 39 of the Trading with the Enemy Act and is not entitled to obtain return of the vested property.

The evidence presented in this case has extended to many disputed items of fact, but it develops that upon reaching findings as to a limited number of them, this suit may be decided.

I find the agreement dated October 5, 1931, between Wilhelm and Marta von Opel, as donors, and their son Fritz von Opel, as donee, was made for the primary purpose of obtaining realization in the form of gold or American securities from the sale of the 600 shares of Opel Works stock, but there was also a purpose to make financial provision for Fritz von Opel. In the transaction, Wilhelm and Marta von Opel intended to retain a usufructuary interest, according to the laws of Germany, in any property which might be obtained from funds resulting from the sale in the United States of the Opel Works stock, and it was only by inadvertence this was not accomplished by the agreement itself. However, at a time between 1932 and 1934, following the sale of the Opel Works stock in the United States and a purchase of American securities from the funds received, there was a delivery of the stock of plaintiff corporation, which had acquired the American securities, to one Hans Frankenberg, who, the evidence compels me to find was acting in the transaction as agent for Wilhelm and Marta von Opel. According to the laws of Germany, the delivery to Frankenberg resulted in the establishment of a usufructuary interest in favor of Wilhelm and Marta von Opel in plaintiff corporation and all of its assets. In 1935, a

waiver of this interest was discussed by Wilhelm von Opel with his then attorney, Dr. Gros, but I find that a waiver was not in fact made. I further find that at the time the Alien Property Custodian vested the American securities which are the subject of this suit, Wilhelm and Marta von Opel continued to hold, without impairment, their usufructuary interest in said stock of plaintiff corporation and the American securities.

A right of usufruct, once established, is under German law an in rem right in property. A person having a usufruct in property has a right:

(a) to the enjoyment of the property or, in the case of money or securities, to the income from the securities;

(b) to co-possession of the property together with the person holding legal title to the property;

(c) to a voice in the management of the property insofar as the maintenance and preservation of the usufructuary's rights under subsection (a) above are concerned;

(d) to prevent the sale or disposition of the property as a result of his right to co-possession;

(e) the German Civil Code does not mention whether the usufructuary, for the protection of his income, has any voting rights. In the absence of a decided case the legal commentaries speculate in three different directions. One position is that the title owner has all voting rights and the usufructuary no voting rights whatsoever. The second position is that the title owner has a voting right for all measures which have nothing to do with income while the usufructuary can vote in regard to income. The third position is that the usufructuary has all the voting rights.

Other rights created by the terms of the agreement dated October 5, 1931, were (a) the right of Wilhelm and Marta von Opel to receive 80% of the income from the American securities; (b) if Fritz von Opel should predecease his parents, or one of them, without leaving legitimate issue, the complete ownership of the securities will revert to Wilhelm and Marta von Opel, or the survivor; and (c) if the parents, Wilhelm and Marta von Opel, should predecease Fritz von Opel, the gift made by the agreement dated October 5, 1931, will be considered as an advancement and be deducted from his share in such property as might be inherited by him or his sister, Mrs. Elinor Sachs, nee von Opel, or in case of her prior death, by her issue.

At all times involved in this suit, Wilhelm and Marta von Opel were citizens of Germany and "enemies", as defined by the Trading with the Enemy Act. Their daughter, Mrs. Elinor Sachs, is a native of Germany presently residing in Switzerland. In November, 1939, Fritz von Opel, formerly a German citizen, became naturalized under the laws of the principality of Liechtenstein, a neutral country during World War II.

■ In my opinion, the usufructuary and other interests of Wilhelm and Marta von Opel in the stock of plaintiff corporation and the securities vested by the Alien Property Custodian in June and July 1942 compel in law a decision against plaintiff's claim in this suit. By Section 32(a) (2) (E) of the Trading with the Enemy Act, an interest in property vested by the Alien Property Custodian will not be returned where the owner is a foreign corporation which at any time after December 7, 1941, was controlled, or 50 per centum or more of the stock was owned, by any person ineligible to receive return of the vested property. The purpose of the Trading with the Enemy Act was to reach enemy interests which masqueraded under innocent fronts and where securities or other interests are found to be held by a neutral but under circumstances constituting enemy taint, return of the property after vesting by the Alien Property Custodian will be barred.[2] What is necessary to be proved to constitute enemy taint was left undecided by the Supreme Court. We are called upon to decide this question in the present case.

■ In reaching a determination of enemy taint, the Court will look not only to circumstances which indicate enemy ownership or control, but also to connections or associations with enemy interests. It seems to me the usufructuary interests of Wilhelm and Marta von Opel and the contingent interests which they, their daughter or her issue, owned in the vested securities pursuant to the provisions of the agreement of October 5, 1931, and the delivery of the stock of plaintiff to Wilhelm and Marta von Opel's agent, constitute such substantial enemy taint as to bar recovery by plaintiff. But there is further evidence of enemy taint. The circumstances surrounding the Liechtensteinean citizenship of Fritz von Opel, the sole remaining owner of interest in the vested property, are not without significance. It is conceded Fritz von Opel

2 Clark v. Uebersee-Finanz Korporation, 332 U.S. 480, 67 S.Ct. 1749, 91 L.Ed. 1873.

has technical status as a citizen of Liechtenstein, and for the purposes of this suit, it may be conceded his citizenship in that country is not open to collateral attack. But where, as in this case, the vested property is found to be owned by different parties, some of whom clearly are enemies and the sole remaining one of whom is a neutral, it seems proper in a determination of enemy taint of the property, to inquire into possible enemy tendencies of the neutral.

Fritz von Opel was born in Germany in 1899 and until 1929 lived in that country, together with his family, who were prominent industrialists known not only in Germany but in other parts of the world. Fritz von Opel achieved widespread distinction in sports in Germany and participated in its behalf in international events. While after 1929 he spent a large part of his time out of Germany, his roots remained firmly planted in that country. It was not until November of 1939, after World War II had begun, that Fritz von Opel took any steps to change his citizenship. At that time, he went through proceedings to become a naturalized citizen of the principality of Liechtenstein. He paid $10,000 to obtain this citizenship and signed certain formal documents. However, he never has been in Liechtenstein more than a few hours at any one time; his visits have been few and in each instance of short duration; and he has never established a place of abode there. He never has taken an oath of allegiance to Liechtenstein or formally renounced citizenship in Germany. In technical form Fritz von Opel is a citizen of a neutral country, but I find beyond doubt that between 1939, when he became a naturalized citizen of Liechtenstein, and 1941, when war was declared by the United States, he had a continued interest in the welfare of and sympathy for Germany.

There is an additional circumstance in this case which of itself perhaps would not prevent recovery by plaintiff in this suit, but which with the other facts of the case tends to indicate enemy taint. The evidence shows that plaintiff at all material times in this suit owned complete stock interest in Transdanubia Bauxite, A.G., a mining corporation in Hungary. On December 13, 1941, Hungary formally became an enemy of the United States. Transdanubia Bauxite, A.G., mined bauxite, an essential ingredient in the production of aluminum. Before the war, it is clear that part of the output was shipped to Germany. There is evidence tending to show also that Transdanubia shipped bauxite to Germany during December, 1941, at or about the time of the declaration of war between Hungary and the United States. In November, 1939, Fritz von Opel, in response to a letter from Giulini Brothers, of Germany, requesting his service in getting the production in the mines resumed, went to Hungary "to speed up production in the bauxite mine." The letter to Fritz von Opel stated in part, "you would do meritorious service for the raw material supply of the German aluminum industry and the entire war economy of Germany if you would tackle with all your energy the resumption of production in the mines." In addition, during 1939 plaintiff guaranteed a loan of 32,000 Swiss Francs ($7,000) to Transdanubia Bauxite, A.G., which loan was extended at quarterly periods until November 17, 1942, when plaintiff was advised that its collateral had been released. While it is true there is no showing that plaintiff executed any control over its subsidiary after December 1941, it appears plaintiff never took affirmative steps to sever its relations with Transdanubia. Thus plaintiff had an interest in and an association with an enemy corporation during World War II which apparently supplied war materials to the enemies of the United States.

■ From what has been stated, it would be difficult in my opinion to find a stronger case of enemy taint in vested property short of full ownership by an enemy than exists in this case. The neutral aspect of ownership in the property is insignificant and it seems to me the plain intent of the Trading with the Enemy Act would be defeated by ordering a return of the vested securities.

■ During the oral argument of this case, while counsel for the defendant was presenting his contentions with regard to the claim of existence in favor of Wilhelm and Marta von Opel of a usufructuary interest in the vested properties, plaintiff's

counsel interrupted to suggest that granting the Court should find such interest existed at the time of vesting, nevertheless since Fritz von Opel, a neutral, had a well defined separate interest which might be determined by the Court, he would be entitled to recover to the extent of such interest. This point was enlarged by one of plaintiff's counsel in his rebuttal argument. No such claim is made by the pleadings. This suit was not brought by Fritz von Opel upon a claim of division of interests which he held together with his parents, but was brought by a corporation of Switzerland which claimed to be entitled to a return of the vested American securities, based upon a claim that Wilhelm and Marta von Opel held no interest "directly or indirectly, in whole or in part," in the properties. At the time the case was pre-tried, when the parties were called upon to state the issues to be litigated and to make any amendments of the pleadings necessary to present new issues, it was agreed the action was to recover property belonging to plaintiff corporation in which there was no enemy interest. Without consent of the defendant, the Court should not at this late time adjudicate an issue where the interest sought to be established is different from that set forth in the pleadings and where the party plaintiff also is different. Defendant well may desire to present other factual information and develop legal arguments which only partially have been made in this case.

Judgment will be entered dismissing plaintiff's suit.