UEBERSEE FINANZ–KORPORATION, A. G., v. McGRATH, Attorney General.

No. 10464.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 13, 1950.

Decided Feb. 8, 1951.

On Motion for Clarification of Opinion June 22, 1951.

Clark, Circuit Judge, dissented.

Thurman Arnold, Washington, D. C., with whom Edward J. Ennis, New York City, and Walter E. Gallagher, Washington, D. C., were on the brief, for appellant. Milton V. Freeman, Washington, D. C., also entered an appearance for appellant.

James L. Morrisson, Attorney, Department of Justice, Washington, D. C., with whom Asst. Atty. Gen. Harold I. Baynton and Joseph Laufer, Attorney, Department of Justice, Washington, D. C., were on the brief, for appellee. George B. Searls, Attorney, Department of Justice, Washington, D. C., also entered an appearance for appellee.

Before CLARK, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant brought this civil action to recover shares of stock in certain American corporations, which shares had been seized by and vested in the Alien Property Custodian. The underlying and surrounding circumstances are extended and complicated. For present purposes we need state only the few which control the conclusion to the controversy.

On October 5, 1931, Wilhelm and Marta von Opel, who were then and always remained nationals of Germany, gave, by a written instrument, to their son, Fritz, six hundred shares of stock in a German corporation. The instrument provided, in part:

"I, Wilhelm von Opel, herewith transfer title to these shares to our son Fritz von Opel by assigning to him our claim for the delivery of these shares to us.

"The usufruct in the shares is not assigned to Fritz von Opel. It remains with Wilhelm von Opel and his wife, hereafter called the parents Opel, until the death of the survivor of them. However, 20% of all dividends and in- terest received will accrue to Fritz von Opel."

The instrument also provided that the proceeds of any sale of, or the property taken in exchange for, the transferred shares should be substituted for those shares. The property presently involved is governed by the above-quoted provision, being successor to and substituted for that property.

■ The instrument of gift created an *in personam* right in Wilhelm von Opel to demand that a usufruct be established, and such establishment could be effected at any time by actual or symbolic delivery of possession to the usufructuary or his agent. Such a delivery was accomplished by placing the shares (except qualifying directors' shares) in a safety deposit box and giving the key to an agent of Wilhelm von Opel. The District Court concluded that a valid usufruct was thus created, giving Wilhelm and his wife *in rem* rights in the shares, among which rights was the right to the income from the shares. We agree with that conclusion. Indeed it is not seriously contended before us that the usufruct was not at one time established or that, if established, such usufructuary interest did not include the right to the income from the shares.

Appellant says that the usufruct was disestablished in 1936, when the particular shares were sold and the essential co-possession of them was thus lost. But it appears that the sale was a form only, conceded by appellant to have been for the purpose of tax avoidance, and the transaction was thereafter reversed; indeed it does not appear that the co-possession was ever actually disturbed. This was the view of the District Court, and we see no reason to disagree with it. Appellant also says that the usufruct was waived. It appears that waiver was discussed by the parties, but we are shown no evidence that a waiver was ever effectuated or intended to be effectuated.

■ The essence of the legislation dealing with enemy ownership or control of

property[1] is the prevention of economic benefit to the enemy.[2] The epitome of such economic benefit would be the flow into enemy hands of earnings from American efforts. No phase of interest in property in this country fits more precisely into the intent and purpose of this legislation than does the ownership of the right to the dividends on the stock of domestic corporations. The language of the statute is sufficient to encompass that interest; a usufruct is the sort of "interest" of which the statute speaks. In the case at bar that right was owned by German nationals. The usufruct, a right *in rem,* which included a right to the dividends, was owned, apart from the title to the shares themselves, by German nationals. This case does not involve a diluted "taint"; it involves the ownership by enemy nationals of the economic benefits of American business. This seems to us to be a more obvious objective of the vesting provisions of the statute than is the bare ownership of a sterile legal title. As between the right to the naked tree and the right to the periodical fruit, the benefit to the enemy would be more in the latter than in the former.

The judgment of the District Court is affirmed on the foregoing ground. It is unnecessary that we consider other matters deemed by that court to support its conclusion.

Affirmed.

CLARK, Circuit Judge, dissents.

On Appellant's Motion for Clarification of the Opinion of the Court

PRETTYMAN, Circuit Judge.

Appellant asks for clarification of the opinion of the court in this matter in three respects, or, in the alternative, for modification of the decision.

1. The first point upon which the appellant asks clarification concerns the view of the court as to whether the usufruct in shares of the Swiss corporation created a usufruct in the shares of American corporations owned by the Swiss corporation.

The usufruct here involved was originally created in 600 shares of stock in the Adam Opel Works, a manufacturer of motor cars in Germany. In 1931 these shares were sold, and the proceeds consisted of approximately $2,500,000 and 47,625 shares of General Motors stock. Thereafter the major part of those proceeds was used to purchase certain investments in the United States, consisting of stock in corporations located in the United States. These shares were the assets vested by the Alien Property Custodian and the subject of the present lawsuit. The plaintiff is a Swiss corporation, which is a holding company acquired for the purpose of holding the proceeds of the sale of the 600 shares in the Adam Opel Works. It owned the vested property. All of its shares except three qualifying shares were placed by Fritz von Opel in lock box, and the key was delivered to an agent of Wilhelm von Opel. The interpostion of this wholly owned holding company did not destroy or disturb the usufruct in the proceeds of the 600 shares of Opel stock. The interposition was of form only and not of substance. The co-possession of the shares of the holding company, pursuant to the terms of the usufruct agreement, was sufficient to perfect that usufruct. Appellant would establish what seems to us to be a purely formal separation between the ownership of the assets and the ownership of the shares of a wholly owned holding company. Whatever ownership the Swiss corporation had in its assets was subject to the usufruct agreement, and the co-possession of the shares of the holding corporation was sufficient to establish the requisite co-possession of its assets.

In the course of its discussion appellant says, "This Court rejects enemy 'taint' as as basis for its decision * * *." Appel-

1. Sec. 5(b) of the Trading With The Enemy Act of 1917, 40 Stat. 411, as amended by Sec. 301 of the First War Powers Act of 1941, 55 Stat. 839, 50 U.S.C.A.App. §§ 5(b), 616.

2. Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88.

lant misunderstands the statement in the opinion. We said, "This case does not involve a diluted 'taint'; it involves the ownership by enemy nationals of the economic benefits of American business." That statement was an *a fortiori* statement. The Supreme Court had made it clear that enemy taint was sufficient to support seizure and vesting and that indirect as well as direct interest was within the phraseology of the statute, "any property or interest". Our observation was to the effect that in the case at bar the enemy interest was the complete and perfect sort of interest to which the statute was directed, and was not merely a taint. This is not a borderline case, in our view.

■ 2. Appellant inquires as to our meaning in respect to 20 per cent of the shares, which it says is owned by Fritz von Opel. The usufruct agreement recited:

> "The usufruct in the shares is not assigned to Fritz von Opel. It remains with Wilhelm von Opel and his wife, hereafter called the parents Opel, until the death of the survivor of them. However, 20% of all dividends and interest received will accrue to Fritz von Opel."

That provision is perfectly clear. No part of the usufruct in the shares was assigned to Fritz von Opel. The whole of the usufruct remained with Wilhelm and his wife. Fritz von Opel was given a contract right to receive from Wilhelm and his wife 20 per cent of the dividends and interest received by them. This right in Fritz was a contract right and not a right *in rem.*

3. Appellant's third request for clarification is really a request for modification and is premised upon Fritz von Opel's ownership of a 20 per cent interest in the shares. Since we hold that he had no such ownership, except a contractual right to receive a portion of the dividends received by the enemy owners, we need not consider further this portion of the motion.

CLARK, Circuit Judge, did not participate in the foregoing memorandum.