UEBERSEE FINANZ–KORPORATION, A. G., v. McGRATH, Attorney General.

No. 10464.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 13, 1950.

Decided Feb. 8, 1951.

Writ of Certiorari Granted Oct. 15, 1951.

See 72 S.Ct. 74.

Mr. Thurman Arnold, Washington, D. C., with whom Messrs. Edward J. Ennis and Walter E. Gallagher, Washington, D. C., were on the brief, for appellant. Mr. Milton V. Freeman, Washington, D. C., also entered an appearance for appellant.

Mr. James L. Morrisson, Attorney, Department of Justice, Washington, D. C., with whom Asst. Atty. Gen. Harold I. Baynton and Mr. Joseph Laufer, Attorney, Department of Justice, Washington, D. C., were on the brief, for appellee. Mr. George B. Searls, Attorney, Department of Justice, Washington, D. C., also entered an appearance for appellee.

Before CLARK, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant brought this civil action to recover shares of stock in certain American corporations, which shares had been seized by and vested in the Alien Property Custodian. The underlying and surrounding circumstances are extended and complicated. For present purposes we need state only the few which control the conclusion to the controversy.

On October 5, 1931, Wilhelm and Marta von Opel, who were then and always remained nationals of Germany, gave, by a written instrument, to their son, Fritz, six hundred shares of stock in a German corporation. The instrument provided, in part:

"I, Wilhelm von Opel, herewith transfer title to these shares to our son Fritz von Opel by assigning to him our claim for the delivery of these shares to us.

"The usufruct in the shares is not assigned to Fritz von Opel. It remains with Wilhelm von Opel and his wife, hereafter called the parents Opel, until the death of the survivor of them. However, 20%

of all dividends and interest received will accrue to Fritz von Opel."

The instrument also provided that the proceeds of any sale of, or the property taken in exchange for, the transferred shares should be substituted for those shares. The property presently involved is governed by the above-quoted provision, being successor to and substituted for that property.

■ The instrument of gift created an *in personam* right in Wilhelm von Opel to demand that a usufruct be established, and such establishment could be effected at any time by actual or symbolic delivery of possession to the usufructuary or his agent. Such a delivery was accomplished by placing the shares (except qualifying directors' shares) in a safety deposit box and giving the key to an agent of Wilhelm von Opel. The District Court concluded that a valid usufruct was thus created, giving Wilhelm and his wife *in rem* rights in the shares, among which rights was the right to the income from the shares. We agree with that conclusion. Indeed it is not seriously contended before us that the usufruct was not at one time established or that, if established, such usufructuary interest did not include the right to the income from the shares.

Appellant says that the usufruct was disestablished in 1936, when the particular shares were sold and the essential co-possession of them was thus lost. But it appears that the sale was a form only, conceded by appellant to have been for the purpose of tax avoidance, and the transaction was thereafter reversed; indeed it does not appear that the co-possession was ever actually disturbed. This was the view of the District Court, and we see no reason to disagree with it. Appellant also

says that the usufruct was waived. It appears that waiver was discussed by the parties, but we are shown no evidence that a waiver was ever effectuated or intended to be effectuated.

■ The essence of the legislation dealing with enemy ownership or control of property[1] is the prevention of economic benefit to the enemy.[2] The epitome of such economic benefit would be the flow into enemy hands of earnings from American efforts. No phase of interest in property in this country fits more precisely into the intent and purpose of this legislation than does the ownership of the right to the dividends on the stock of domestic corporations. The language of the statute is sufficient to encompass that interest; a usufruct is the sort of "interest" of which the statute speaks. In the case at bar that right was owned by German nationals. The usufruct, a right *in rem*, which included a right to the dividends, was owned, apart from the title to the shares themselves, by German nationals. This case does not involve a diluted "taint"; it involves the ownership by enemy nationals of the economic benefits of American business. This seems to us to be a more obvious objective of the vesting provisions of the statute than is the bare ownership of a sterile legal title. As between the right to the naked tree and the right to the periodical fruit, the benefit to the enemy would be more in the latter than in the former.

The judgment of the District Court is affirmed on the foregoing ground. It is unnecessary that we consider other matters deemed by that court to support its conclusion.

Affirmed.

CLARK, Circuit Judge, dissents.

1. Sec. 5(b) of the Trading With The Enemy Act of 1917, 40 Stat. 411, as amended by Sec. 301 of the First War Powers Act of 1941, 55 Stat. 839, 50 U.S.C.A.Appendix, §§ 5(b), 616.

2. Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88.