# UEBERSEE FINANZ-KORPORATION, A. G., *v.* Mc-GRATH, ATTORNEY GENERAL, SUCCESSOR TO THE ALIEN PROPERTY CUSTODIAN.

No. 178.   Argued January 2, 1952.—Decided April 7, 1952.

*Thurman Arnold* argued the cause for petitioner. With him on the brief were *Edward J. Ennis* and *Harry M. Plotkin.*

*James L. Morrisson* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Baynton, Myron C. Baum* and *Joseph Laufer.*

MR. JUSTICE MINTON delivered the opinion of the Court.

Petitioner sued in the District Court for the District of Columbia for the return of certain of its property vested by the Alien Property Custodian in 1942 under the Trading with the Enemy Act of 1917, 40 Stat. 411, as amended by the First War Powers Act, 1941, 55 Stat. 839. The District Court found for the Custodian, 82 F. Supp. 602, and the Court of Appeals affirmed, 88 U. S. App. D. C. 182, 191 F. 2d 327. We granted certiorari, 342 U. S. 847.

The following facts were found by the District Court and confirmed by the Court of Appeals upon an abundance of evidence in the record. In 1931, Wilhelm von Opel, a citizen and resident national of Germany, owned

certain shares of stock in the Adam Opel Works, a German corporation largely owned by General Motors Corporation. Wilhelm had an agreement with General Motors to sell his shares at a price. In 1931, he became alarmed at business conditions in Germany and desired to get his stock out of the country to save his investment for himself and his family from the economic and governmental influences there prevailing. In that year, he and his wife entered into what was known under German law as a usufruct agreement with their only son, Fritz, who had not lived in Germany since 1929 and for that reason was not subject to the German restrictions upon the handling of this property. By this agreement, Wilhelm's title to the shares in the Adam Opel Works was transferred to Fritz. The instrument provided as follows:

> "The usufruct in the shares is not assigned to Fritz von Opel. It remains with Wilhelm von Opel and his wife . . . until the death of the survivor of them. However, 20% of all dividends and interest received will accrue to Fritz von Opel."

The instrument provided further that if Fritz died before his parents and without issue, the transfer was to be void and was to revert to his parents, the transferors. If the parents died before Fritz, he was to have the property as an advancement, to be deducted from his share in his parents' estate. The usufruct income not drawn by the parents was also to be accounted for by Fritz as an advancement.

After much expert testimony, the District Court found the law of Germany pertaining to such usufruct agreement to be as follows:

> "52. A right of usufruct, once established, is under German law an *in rem* right in property. A person having a usufruct in property has a right:

"(a) to the enjoyment of the property or, in the case of money or securities, to the income from the securities;

"(b) to co-possession of the property together with the person holding legal title to the property;

"(c) to a voice in the management of the property insofar as the maintenance and preservation of the usufructuary's rights under subsection (a) above are concerned;

"(d) to prevent the sale or disposition of the property as a result of his right to co-possession;

"(e) the German Civil Code does not mention whether the usufructuary, for the protection of his income, has any voting rights. In the absence of a decided case the legal commentaries speculate in three different directions. One position is that the title owner has all voting rights and the usufructuary no voting rights whatsoever. The second position is that the title owner has a voting right for all measures which have nothing to do with income while the usufructuary can vote in regard to income. The third position is that the usufructuary has all the voting rights." R. 60–61; 82 F. Supp. 602, 605.

Under this agreement, Wilhelm and his wife had a usufruct in the Adam Opel stock transferred to Fritz. The latter, on October 17, 1931, sold the usufruct property to General Motors, in accordance with the contract which Wilhelm had with that company. In order to protect the several interests involved, the proceeds of the sale were transferred to petitioner, a Swiss corporation acquired by Fritz for this purpose. Eventually these funds were used to purchase stocks, later transferred to petitioner, in corporations organized under the various states of the United States, from which derived the stocks vested by the Alien Property Custodian. Fritz owned 97% of

the stock of petitioner. Under the German law, as found by the District Court, a usufructuary may follow the ascertainable proceeds of the original property subject to the usufruct. Therefore, the stocks purchased by petitioner with the proceeds of the sale of the usufruct property were subject to and were treated as subject to the usufruct agreement.

On June 7, 1935, Fritz placed all but three shares of the capital stock of petitioner in a safety deposit box in Zurich, Switzerland, and gave the key thereto to Hans Frankenberg, who received it as agent of Wilhelm von Opel. Frankenberg had become the managing director of petitioner at Wilhelm's request in 1932, and exercised control over petitioner's investments until the vesting of the property herein involved. By the delivery to Wilhelm's agent of the key to the box containing petitioner's stock, there was thus transferred to Wilhelm possession of the *res,* subject to the usufruct; and the usufruct agreement was thereby consummated. Fritz also engaged in activities on behalf of petitioner concerning its investments, but under the guidance of Wilhelm or his agent, Frankenberg.

Neither Wilhelm nor his wife ever drew any income from the usufruct. An oil lease owned by one of the American corporations whose stock was purchased with proceeds from the sale of the Adam Opel shares to General Motors, was sold, and the proceeds of that sale used to pay a fine of Wilhelm in Germany. Expenses of a trip by Wilhelm to South America and one to Hungary were paid by petitioner and charged against the income account of Fritz.

Petitioner owned all the stock of a subsidiary Hungarian corporation engaged in the mining of bauxite in Hungary, and in 1939 and 1940 guaranteed a loan by a Swiss bank to this corporation for its operations. The loan was repaid in November 1942. The United States

was at war with Hungary from December 13, 1941. During October, November, and December 1941, the Hungarian corporation shipped bauxite to Germany and had a contract to do so until the end of 1942.

In 1942, the Alien Property Custodian vested the stocks held by petitioner in several American corporations and all the right, title, and interest of petitioner in and to a certain contract with another American corporation. All of the stocks had been acquired from the proceeds of the original usufruct property.

From October 5, 1931, the date of the usufruct agreement, the usufruct property was controlled, used, and in all ways handled and directed by Wilhelm and his managing agents. The interest of Fritz in petitioner was wholly subordinated to that of Wilhelm. Fritz had the bare legal title and the right to 20% of the income from the property. Wilhelm is now dead. His wife, a daughter, and the son, Fritz, still survive.

Petitioner was in this Court on the pleadings in this case in *Clark* v. *Uebersee Finanz-Korp., A. G.*, 332 U. S. 480. There, it was alleged in the complaint that petitioner was not an enemy or ally of an enemy, and that at no time specified in the complaint had the property in question been owned or controlled, directly or indirectly, in whole or in part, by an enemy, an ally of an enemy, or a national of a designated enemy country; that none of the property had been owing or belonging to or held on account of or for the benefit of any such person or interest. This Court construed these allegations "to mean that the property is free of all enemy taint and particularly that the corporations whose shares have been seized, the corporations which have a contract in which respondent has an interest, and respondent itself, are companies in which no enemy, ally of an enemy, nor any national of either has any interest of any kind whatsoever, and that respondent has not done business in the territory of the

enemy or any ally of an enemy." P. 482. The complaint alleging such facts was held to be sufficient as against a motion to dismiss, and the case was sent back for trial. Upon the trial, the facts were found as above stated.

However, from the facts found, it is clear that petitioner for all practical purposes was, to the extent of 97%, largely owned, managed, used, and controlled by Wilhelm von Opel, a national of Germany. The findings demonstrate that petitioner was a corporate holding company acquired for the purpose of enabling Wilhelm to control and use his property as he saw fit. His interest was paramount and controlling. The interest of Fritz was wholly and in reality subordinated to Wilhelm's, except as to the right of Fritz to receive 20% of the income from the usufruct property. Petitioner was neutral in name only. Its enemy taint was all but complete because of the predominant influence and control of Wilhelm. Wilhelm had and used the substance, while Fritz had the bare legal title; and such right as this gave Fritz, he exercised or failed to exercise in complete subordination to the will of his father. We agree with the Court of Appeals when it said:

> "This case does not involve a diluted 'taint'; it involves the ownership by enemy nationals of the economic benefits of American business." 88 U. S. App. D. C. at 183, 191 F. 2d at 328.

Before 1941 the property here involved could not have been vested, because this petitioner was a corporation of a neutral country, Switzerland, unless such corporation was shown to be doing business in an enemy country or in the country of an ally of an enemy. *Behn, Meyer & Co.* v. *Miller,* 266 U. S. 457; *Clark* v. *Uebersee Finanz-Korp., A. G., supra.* But on December 18, 1941, Congress amended the Trading with the Enemy Act by the pas-

sage of the First War Powers Act, 1941, 55 Stat. 839, and gave respondent power to vest any property or interest of any foreign country or national thereof in said property. However, under § 9 (a) of the Trading with the Enemy Act, one not an enemy, as defined in § 2 of said Act, can recover any interest, right, or title which he has in the property so vested. As construed by this Court in *Clark* v. *Uebersee Finanz-Korp., A. G., supra,* § 2 included in the word "enemy" all corporations affected with an "enemy taint." Since we find petitioner to be so affected because of the direct and indirect control and domination by an enemy national, Wilhelm von Opel, petitioner cannot recover under § 9 (a).

It is suggested that vested property must be returned unless there is proof of actual use of the property for economic warfare against the United States. The crucial fact is not the actual use by an enemy-tainted corporation of its power in economic warfare against the United States. It is the existence of that power that is controlling and against which the Government of the United States may move. The Government does not have to wait for the enemy to do its worst before it acts. Cf. *Miller* v. *United States,* 11 Wall. 268 at 306.

As the District Court said, it would be difficult "to find a stronger case of enemy taint in vested property short of full ownership by an enemy than exists in this case. The neutral aspect of ownership in the property is insignificant . . . ." 82 F. Supp. at 606.

In view of the decision today in *Kaufman* v. *Societe Internationale, ante,* p. 156, consideration must be given to an effort of petitioner to open the case for the assertion of the rights of Fritz von Opel.

Petitioner attempted at the end of the litigation in the District Court to have the case reopened for the purpose of asserting and establishing the nonenemy status of Fritz von Opel. Because of the failure to diligently and timely

assert the interest of Fritz, the District Court refused to reopen the case for further consideration of such separate interest.

The judgment of the Court of Appeals is affirmed as to petitioner, but in view of the novel holding in *Kaufman,* the Court is of the opinion that its decision in *Hormel* v. *Helvering,* 312 U. S. 552, is applicable. We accordingly vacate the judgment of the court below and remand the cause to the District Court for consideration, in the light of *Kaufman* and this opinion, of any application that may be made on behalf of Fritz von Opel within 30 days from the date of remand, and in all other respects the judgment is affirmed.

*It is so ordered.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.