**Fritz VON OPEL, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General, as Successor to the Alien Property Custodian, Appellee.**

**No. 13265.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1956.

Decided May 23, 1957.

Petition for Rehearing Denied June 20, 1957.

---

Mr. Edward J. Ennis, New York City, with whom Messrs. Thurman Arnold, Washington, D. C., and Clifford Forster, New York City, were on the brief, for appellant.

Mr. Myron C. Baum, Atty., Dept. of Justice, with whom Messrs. James D. Hill and George B. Searls, Attys., Dept. of Justice, were on the brief, for appellee.

Before PRETTYMAN, WILBUR K. MILLER and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In Uebersee Finanz-Korp., A. G. v. Mc-Grath, 343 U.S. 205, 72 S.Ct. 618, 96 L.Ed. 888, the Supreme Court decided that Uebersee Finanz-Korporation, a Swiss corporation, referred to as Uebersee, was not entitled to recover from the Alien Property Custodian[1] certain property owned by Uebersee prior to the time it was vested by the Custodian in 1942 under the Trading with the Enemy Act.[2] The property consisted principally of shares of stock of two American corporations. Uebersee, claiming not to be an enemy, in 1945 sued under section 9(a) of the Act to recover the property. The litigation has had a considerable history, as indicated by reference to court decisions cited in the margin.[3] We need review this history only in part.

The Supreme Court held that Uebersee could not recover because it was enemy tainted. The enemy taint was attributed to the ownership and control of Uebersee by Wilhelm and Marta von Opel, husband and wife, both German nationals. But it appeared that Fritz von Opel, son of Wilhelm and Marta von Opel and a citizen of Liechtenstein, held legal title to practically all of the stock of Uebersee and that he might have rights which were entitled to recognition under the principles laid down in Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 613, 96 L.Ed. 853, decided the same day as Uebersee. In Kaufman the Court held,

"* * * when the Government seizes assets of a corporation or-

ganized under the laws of a neutral country, the rights of innocent stockholders to an interest in the assets proportionate to their stock holdings must be fully protected."

To permit a determination of the application of this principle to Fritz von Opel's interest in the stock of Uebersee the Court, while affirming our decision against Uebersee itself, Uebersee Finanz-Korporation, A. G. v. McGrath, 89 U.S. App.D.C. 167, 196 F.2d 557, vacated our judgment and remanded the case to the District Court, .

"* * * for consideration, in the light of Kaufman and this opinion, of any application that may be made on behalf of Fritz von Opel within 30 days from the date of remand, and in all other respects the judgment is affirmed." 343 U.S. at page 213, 72 S.Ct. at page 622.

On the remand Fritz von Opel was permitted to intervene in the District Court. The theory of intervener's complaint was that as a nonenemy, a citizen of neutral Liechtenstein, and as the sole beneficial owner of all 100 issued and outstanding shares of Uebersee,[4] he was entitled to all the vested property or in the alternative to that part determined by the court not to be beneficially owned by enemies within the meaning of the Act. After answer the case was tried before Chief Judge Laws of the District Court, who made findings of fact and entered conclusions of law followed by judgment for the Custodian and this appeal therefrom.

1. We use "Alien Property Custodian" and "Custodian" interchangeably and also as including the Attorneys General of the United States who at different times became the successor of the Alien Property Custodian.

2. 40 Stat. 411 (1917), as amended, 50 U.S. C.A.Appendix, § 1 et seq.

3. Uebersee Finanz-Korporation, A. G. v. Markham, 81 U.S.App.D.C. 284, 158 F. 2d 313, affirmed sub nom. Clark v. Uebersee Finanz-Korp., A. G., 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88; Uebersee

Finanz-Korporation, A. G. v. Clark, D. C., 82 F.Supp. 602, affirmed sub nom. Uebersee Finanz-Korporation, A. G. v. McGrath, 89 U.S.App.D.C. 167, 196 F. 2d 557, affirmed 343 U.S. 205, 72 S.Ct. 618, 96 L.Ed. 888; Uebersee Finanz-Korporation, A. G. Liestal, Switzerland v. Brownell, D.C., 121 F.Supp. 420, 127 F.Supp. 42, 133 F.Supp. 615.

4. 97 of the shares are held for intervener by the Frima Trust Establishment of Vaduz, Liechtenstein, and 3 by members of Uebersee's administrative council as qualifying shares.

Among other grounds, which we think we need not consider,[5] the court held that intervener was not an innocent stockholder within the meaning of Kaufman. Chief Judge Laws stated in his opinion:

"Enemy influence and benefit permeate the interest of Fritz von Opel. Fritz von Opel is not in a position to assert, like plaintiff interveners in Kaufman v. Societe Internationale, supra, that he is a mere innocent investor in an ostensibly neutral corporation, with interests hostile to the dominant enemy management, without knowledge the assets in his name were contributing to the resources of enemy nationals." Uebersee Finanz-Korporation, A. G. v. Brownell, D.C., 133 F. Supp. 615, 622.

If this was a correct conclusion it is dispositive of this appeal, and for the reasons now to be stated we think it was correct.

Enemy nationals, Wilhelm and Marta von Opel, had a usufructuary interest in intervener's shares of Uebersee. The court found that under German law a usufructuary had an *in rem* right to the property which included (a) enjoyment of the income; (b) co-possession with the legal owner; (c) a voice in management to preserve the usufructuary's rights, and (d) a right to prevent sale of the property.

This usufruct in the shares of Uebersee, which in turn owned the shares of the two American corporations, arose, according to the court's findings, in the following manner: In 1931 Wilhelm and Marta von Opel by deed of gift, reserving to themselves the usufruct therein or in any property for which exchanged, transferred to Fritz von Opel 600 shares of a German corporation, Adam Opel, A.G. Twenty per cent of all dividends and interest on the stock would accrue under the gift instrument to Fritz von Opel. In October, 1931, Fritz von Opel, then residing outside Germany and acting as attorney-in-fact for his father Wilhelm, sold the 600 shares to General Motors Corporation. He received therefor American currency and securities, to obtain which was one of the reasons for the original transfer of the 600 shares to Fritz von Opel. The proceeds of this sale were transferred to Uebersee and were invested by it principally by purchase of the shares of stock in the American corporations the value of which, at least in part, is now claimed by intervener as an innocent stockholder of Uebersee. In 1935 ninety-seven of the 100 shares of Uebersee had been issued to intervener. In 1935 he had placed these shares in a safe deposit box in a Swiss bank and had delivered the key to an agent of his father. The District Court found that under German law this constituted valid delivery of the usufruct property—purchased with the proceeds of the Adam Opel stock—and completed creation of the usufruct.

The court also found that the agent of Wilhelm who received delivery of the property subject to the usufruct also exercised for his principal control over the investments and activities of Uebersee,[6] and that it was through this arrangement, of which the usufruct was an important part, that Uebersee was found to be affected with enemy taint.[7]

The situation above described differentiates this case from Kaufman. The stockholders who were there authorized to intervene alleged that they were not part of the dominant management group

---

5. These grounds are that intervener was an enemy within the definition of section 2(a) of the Act as "a resident outside the United States and doing business in Hungary," that he was an "agent of the enemy and enemy nationals," and therefore enemy tainted, and that his severable interest in the property was presently of no value.

6. Wilhelm von Opel died during the course of this litigation, but no legal materiality attaches in this case to this death.

7. The findings to which we have referred were all made by the District Court in Uebersee-Finanz Korporation v. Clark, 82 F.Supp. 602, ultimately affirmed by the Supreme Court, Uebersee Finanz-Korp., A. G. v. McGrath, supra.

through which the corporate entity was admittedly tainted. The taint was caused solely by other shareholders, holding other interests in the corporation. Here the taint affecting Uebersee came to the corporate entity through the shares of which intervener was the legal owner. The Kaufman principle here pertinent presupposes that the interests held by the intervening stockholders will be free and clear of enemy taint once they are separated from the corporate entity, while intervener's interests are tainted even when separated from Uebersee, as the taint reaches the corporation through his shares rather than reaching his shares through the corporation. Nor did the enemy control over the American business enterprises arise entirely by the acts of others, as was alleged in Kaufman. The facts previously set out show that intervener through his arrangements with Wilhelm and Marta von Opel was part and parcel of the means by which the effective control of Wilhelm over the vested property was secured. Without the participation of intervener in these arrangements at least this form of control would not have been possible. These factual differences we think are controlling.

Our decision that intervener is not entitled to recover any part of Uebersee's assets as an innocent stockholder of Uebersee is based on the facts and reasons stated above. We have assumed for present purposes that he was not an enemy within the definitions of the Act and our position is altogether aside from intervener's personal sympathies, habits, and activities unrelated to the assets of Uebersee. Moreover, we do not reach any question as to the value of intervener's severable interest, since we hold there is no severable interest he can recover.

■ The District Court held under the doctrine of *res adjudicata* [8] that appellant was bound in the present case by the findings of fact and conclusions of law in the litigation which had eventuated in the decision of the Supreme Court in Uebersee Finanz-Korp., A. G. v. McGrath, supra, holding Uebersee to be enemy tainted.[9] The District Court did not, however, foreclose additional evidence on the issue of enemy status, enemy taint, and the value of intervener's severable interests. See Uebersee Finanz-Korporation, A. G. v. Brownell, D.C., 121 F. Supp. 420.[10]

The factual basis for our decision that intervener is not an innocent stockholder is his relationship to the enemy taint affecting Uebersee. This corporation was found to be tainted because intervener's parents, German nationals, had an *in rem* right in and control over its shares, held in intervener's name. The nature of that right, the resulting control over the corporation, and intervener's active participation in the events which led to establishment of the right cause us to hold that intervener is not an innocent stockholder. The issues regarding the nature and establishment of the enemy interests which resulted in Uebersee's taint were tried in the corporation's litigation. Intervener may not re-litigate those issues

8. *Res adjudicata* is used here in a general sense. When, as in the present case, the cause of action is different from the one involved when the issues in question were previously litigated it is referred to more accurately as estoppel by judgment or collateral estoppel. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898.

9. See Uebersee Finanz-Korporation v. Clark, D.C., 82 F.Supp. 602, affirmed Uebersee Finanz-Korporation, A. G. v. McGrath, 89 U.S.App.D.C. 167, 196 F.2d 577.

10. The District Court, in Uebersee Finanz-Korporation, A. G. v. Brownell, 127 F.Supp. 42, declared inadmissible expert testimony on Swiss law as to the value of intervener's severable interest, on the ground that the parents' rights had arisen under German law. Appellant contends that this was an improper application of *res adjudicata*. We need not decide this point because, as we have said, we do not reach the question of the value of the intervener's severable interest.

in this proceeding. For, as the District Court held, and as cannot be disputed, he

"* * * had full control of the litigation of the suit brought by the * * * corporation. Not only did he appear as a witness and cooperate in prosecution of the suit, but he retained counsel, assisted in pre-trial and trial proceedings and the motion for a new trial, and authorized prosecution of the appeal as plaintiff's representative. The record shows active control, participation and assistance to protect his asserted proprietary and financial interests. This establishes clearly his privity with plaintiff [Uebersee] in the original action. * * *" Uebersee Finanz-Korporation, A. G. v. Brownell, 121 F. Supp. 420, 425.

He is accordingly bound, not because he is a stockholder of the Uebersee corporation, but because he controlled the litigation, in which he had a financial interest, though the suit had been brought in the name of another. Souffront v. La Compagnie des Sucreries, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846; Lovejoy v. Murray, 3 Wall. 1, 18, 18 L.Ed. 129; cf. Buzard v. Helvering, 64 App.D.C. 268, 272, 77 F.2d 391, 395.

We cannot accept appellant's contention that *res adjudicata* does not apply for the reason that the Uebersee litigation did not result in such a final judgment as is essential to give rise to *res adjudicata*. It is of course true there was no final judgment as to intervener's right to recover if he could bring himself within Kaufman. But in holding open this question the Supreme Court expressly affirmed our decision as to the corporation. The Supreme Court's judgment in that regard was final. This is so notwithstanding the Court at the time of affirming also vacated the judgment for the sole purpose of enabling appellant to seek recovery in his own behalf. The true legal situation is that there was a final ad-

judication by the Supreme Court of the matters in issue and decided with respect to Uebersee. These are the matters as to which *res adjudicata* applies to intervener and which form the basis for our present decision.

One further contention should be considered. Intervener says that as a matter of law a stockholder in a neutral corporation is an "innocent stockholder" within the Kaufman decision if he is either an American citizen, which intervener does not claim to be, or is a nonenemy alien, that is, an alien neither resident in enemy territory nor resident outside the United States and doing business within enemy territory, which he does claim to be. He relies upon statements in the court's opinion in Kaufman which refer, at times, to nonenemy aliens as those who may obtain a share of the assets of a corporation in which they hold stock. It is true that only a nonenemy may sue under the Act, but it does not follow that all nonenemies who may sue may recover. The nonenemy character essential to his right to sue does not entitle a stockholder of an enemy tainted corporation to recover on the basis of his stock interest without showing his own "innocence." Reference in Kaufman and Uebersee to the right of one not an enemy as defined in section 2 to recover does not convey the full meaning of Kaufman. As we construe that decision insofar as here pertinent nonenemy status alone is insufficient, in the case of a stockholder of an enemy tainted neutral corporation, to entitle him to recover assets of the corporation commensurate with his stock ownership. Intervener is not within Kaufman because his association with the enemy taint of the corporation in which he holds his stock was a non-innocent association. It was through his shares and through arrangements to which he was a party that the taint attached to the corporation.[11]

Affirmed.

11. This makes it unnecessary to consider whether or not he was an enemy within the definition of that part of section 2 (a) which includes among enemies an individual resident outside the United States who does business within the territory of any nation with which the United States is at war. The District Court found intervener to be within this definition. See note 5 supra.