KAUFMAN ET AL. *v.* SOCIETE INTERNATIONALE
POUR PARTICIPATIONS INDUSTRIELLES
ET COMMERCIALES, S. A., ET AL.

No. 172.  Argued January 2, 1952.—Decided April 7, 1952.

*Irving Moskovitz* argued the cause for petitioners.
With him on the brief were *William Radner, Henry G.*

*Fischer, Seymour Graubard, Odell Kominers, Peter N. Schiller* and *Beryl Harold Levy.*

*David Schwartz* argued the cause for McGrath, Attorney General, et al., respondents. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Baynton, James D. Hill, George B. Searls* and *Sidney B. Jacoby.*

*John J. Wilson* argued the cause for the Societe Internationale Pour Participations Industrielles et Commerciales, S. A., respondent. With him on the brief was *Roger J. Whiteford.*

*William P. MacCracken, Jr., Urban A. Lavery* and *William W. Barron* submitted on brief for Remington Rand, Inc., respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Acting under § 5 (b) of the Trading with the Enemy Act,[1] the Alien Property Custodian vested in himself the American assets of Interhandel, a Swiss corporation.[2] Interhandel sued in the District Court to recover the assets. The Custodian [3] answered alleging that the Swiss corporation was dominated and controlled by officers, agents, and stockholders who were engaged in a conspiracy with German nationals and with the German Government to

---

[1] 40 Stat. 411, 50 U. S. C. App. § 1, as amended by the First War Powers Act, 1941, 55 Stat. 839, 50 U. S. C. App. § 5 (b).

[2] Although the corporation is commonly called "Interhandel," its full legal name is Societe Internationale Pour Participations Industrielles et Commerciales S. A., etc. The American assets consisted of bank accounts and over 90% of the capital stock in the General Aniline & Film Corporation of Delaware, all of the assets apparently being valued at more than $100,000,000.

[3] In 1946, the Attorney General succeeded to the powers and duties of the Alien Property Custodian. Exec. Order No. 9788, 11 Fed. Reg. 11981.

operate the company's business in their interests while we were at war with Germany. Petitioners, United States citizens who own stock in Interhandel, filed a motion to intervene. They admitted the Custodian's charge that Interhandel was dominated by officers and stockholders who had been engaged in such a conspiracy. They also admitted the right of the Custodian to retain an interest in the seized assets proportional to the stock ownership of enemy stockholders. But petitioners contended that they and other nonenemy stockholders had claims in the corporate assets which it was the corporation's duty to protect. Alleging that the dominant enemy group which had charge of the suit would not press the corporate claim in a manner that would adequately protect the claims of innocent shareholders, petitioners asserted a right to intervene under Rule 24 (a) of the Federal Rules of Civil Procedure. The District Court denied the motion to intervene, 90 F. Supp. 1011, and the Court of Appeals affirmed, 88 U. S. App. D. C. 296, 188 F. 2d 1017. Underlying the claimed right of petitioners to intervene is an important question of the power of the Alien Property Custodian under the Trading with the Enemy Act, namely: What part of the assets of a corporation organized under the laws of a neutral country may the Custodian retain where part of the corporate stock is owned by enemies, part by American citizens, and part by nonenemy aliens? This question was reserved in *Clark* v. *Uebersee Finanz-Korp.*, 332 U. S. 480, 489–490. To consider it we granted certiorari in this case. 342 U. S. 847.

*First.* Interhandel is a neutral corporation organized in Switzerland. Prior to 1941, even ownership of its stock and domination by enemy nationals would not have justified seizure of its assets. In order to reach the enemy interests in such neutral corporations, Congress amended the controlling Act in 1941. The background, scope and

consequences of that amendment were discussed in *Clark v. Uebersee Finanz-Korp., supra.* We there held that the 1941 amendment authorized the Custodian to seize and vest in himself all property of any foreign country or national, even that of friendly or neutral nations. At the same time we refused to hold that the 1941 amendment deprived friendly or neutral nations or nationals of a right to have their assets returned if they could prove that they were free of any open or concealed enemy taint. The purpose of the amendment, we found, was "not to appropriate friendly or neutral assets but to reach enemy interests which masqueraded under those innocent fronts." *Clark v. Uebersee Finanz-Korp., supra,* at 485.

Thus, under the 1941 amendment the nonenemy character of a foreign corporation because it was organized in a friendly or neutral nation no longer conclusively determines that all interests in the corporation must be treated as friendly or neutral. The corporate veil can now be pierced. Enemy taint can be found if there are enemy officers or stockholders; even the presence of some nonenemy stockholders does not prevent seizure of all the corporate assets. But such a governmental seizure requires consideration of the plight of innocent stockholders. For as stated in the *Uebersee* case, the amendment does not contemplate appropriation of friendly or neutral assets. While Congress has clearly provided for forfeiture of enemy assets, it has used no language requiring us to hold that innocent interests must be confiscated because of the guilt of other stockholders. Nor does any legislative history pointed out persuade us that Congress intended to inflict such harsh consequences upon the innocent. We decline to read such a congressional purpose into the Act.

Our holding is that when the Government seizes assets of a corporation organized under the laws of a neutral

160

country, the rights of innocent stockholders to an interest in the assets proportionate to their stock holdings must be fully protected. This holding is not based on any technical concept of derivative rights appropriate to the law of corporations. It is based on the Act which enables one not an enemy as defined in § 2 to recover any interest, right or title which he has in the property vested. The innocent stockholder may not have title to corporate assets, but he does have an interest which Congress has indicated should not be confiscated merely because some others who have like interests are enemies.

*Second.* Section 9 (a) of the Trading with the Enemy Act authorizes Interhandel to maintain this action for the recovery of all its assets because it has alleged that it is not enemy dominated. Alleging that they and others are nonenemy stockholders, petitioners charge that it is Interhandel's corporate duty to assert a claim for the return of their proportionate interests in the assets even though other stockholders who dominate the corporation are found to be enemies. Petitioners further allege that the corporate management refuses to assert such a claim, but continues to claim only a return of all assets on the theory that whatever return is obtained must be divided among enemy and nonenemy shareholders in proportion to their stock holdings. This position is taken, petitioners charge, because the suit is being controlled by the very stockholders on whose account the Custodian seized the property and whose interests will be worthless if they are found to be enemies. Petitioners allege that this enemy corporate management, fearing confiscation of its enemy-tainted interests, is about to settle the corporate claim with the Custodian for an amount less than the value of the nonenemy part of the assets. Should this be done, it is said the enemy management contemplates dividing the proceeds proportionately among enemy and

nonenemy stockholders, thus violating the Act in two ways: (1) by depriving nonenemy stockholders of part of their property, and (2) by returning assets to foreign enemy stockholders.

A mere narration of the allegations shows that petitioners' fears are by no means fanciful. Indeed, the Government agrees with the dominant corporate management that the interests of enemy and nonenemy stockholders should be treated alike. The United States wishes to sell the entire assets of Interhandel. And it is argued that if nonenemy stockholders are to be given a chance in court (which right is challenged), they should be limited to individual suits for money judgments against the Custodian. Petitioners claim a proportional right or interest in the specific assets of Interhandel and that they may not be driven to accept their share of whatever price the Government may happen to get from a sale of these valuable assets. In order to play safe, petitioners have filed a separate suit in a Federal District Court. But we think the questions involved in disputes like this can be more appropriately resolved in the corporate actions authorized by § 9 (a) than by resort to a multiplicity of separate actions. In such suits the nonenemy stockholder in his own right may assert his nonenemy character in order to protect his own interest from the enemy taint caused by other stockholders. Courts trying such corporate actions have adequate equitable power and procedural flexibility to protect all interests, even when the corporate recovery is not for the benefit of all stockholders but only for those who are nonenemies.

In view of our holding that Congress has recognized that nonenemy stockholders of nonenemy foreign corporations have a severable interest in corporate assets seized by the Custodian, it follows that the allegations of these petitioners entitle them to intervene. These allegations, if true, show that petitioners' interests may

be inadequately represented and that they may be bound by a judgment in this corporate action. This brings the claim of intervention squarely within Rule 24 (a)(2) of the Federal Rules of Civil Procedure.[4]

*Reversed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE REED, with whom THE CHIEF JUSTICE and MR. JUSTICE MINTON join, dissenting.

The Court holds that "when the Government seizes assets of a corporation organized under the laws of a neutral country, the rights of innocent stockholders to an interest in the assets proportionate to their stock holdings must be fully protected." Such a holding opens wide one door of escape from war damage claims of the United States and its citizens against foreign corporations, organized and controlled by enemies in neutral territory. As the opinion does not indicate whether the alleged nonenemy stockholder must bear the burden of proving his character, we assume that this burden rests on the claimant stockholder in an enemy-tainted corporation. Even so, the difficulty of rebutting an individual's self-serving evidence as to his neutrality is obvious. The war and prewar activities and connections of the many American and neutral residents, stockholders of neutral corporations engaged in world-wide dealings, are known largely only to the interested individual. The definition of "enemy" in the Trading with the Enemy Act leaves innumerable paths for stockholders sheltered by the Court's decision to escape responsibility for the acts of

---

[4] "Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; . . . ." See *Sutphen Estates, Inc.* v. *United States,* 342 U. S. 19.

the corporate agency that their investments have made powerful and efficient to undermine our security.[1]

Thus a national of an enemy nation, under *Guessefeldt v. McGrath,* 342 U. S. 308, may now recover, on his showing of his own nonenemy character, all his interest in the assets of vested enemy-dominated neutral corporations. Every dollar that may be drawn by nonenemies from the assets of an enemy-dominated corporation reduces the sums available for national and individual indemnification for war damage.[2] As the objective of the Trading with the Enemy Act is not only the sterilization of funds against enemy use during war but also the

---

[1] 50 U. S. C. App. § 2:

"The word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory."

[2] It is alleged by the United States that the conspiracy of which the respondent Societe was a part had for its objective "to conceal, camouflage and cloak the ownership, control, and domination by I. G. Farben of properties and interests in many countries of the world, including the United States, other than Germany. Among the various purposes and objectives of the said conspiracy were to assist I. G. Farben:

.  .  .  .  .

"(e) To conceal, camouflage and cloak the ownership, control and domination by I. G. Farben of properties and interests located in countries, including the United States, other than Germany, in order to avoid seizure and confiscation in the event of war between such countries and Germany."

The Societe alleges that it "is the owner of 2,050,000 shares of the Common B stock, and 455,448 shares of the Common A stock, of *General Aniline & Film Corporation,* of a value in excess of One Hundred Million Dollars ($100,000,000)," now at stake.

creation of a reparation pool of enemy and enemy-tainted assets for indemnification of war injuries, such diminutions imperil the purposes of the Act. Cf. *Propper* v. *Clark*, 337 U. S. 472, 484.

## II.

The Court's holding permits foreign sympathizers, residents of the United States or neutral territory, not covered by the definition of enemies, to avoid sacrifice in war of their financial interests through the trite scheme of investment in neutral corporations, controlled and used by our enemies for our defeat. If the question of the rights of a nonenemy stockholder were at issue in *Uebersee Finanz-Korporation* v. *McGrath*, 343 U. S. 205, decided today, that nonenemy stockholder, under the Court's opinion in this case, would recover his proportion of the corporation assets, despite the fact that *Uebersee*

> "owned all the stock of a subsidiary Hungarian corporation engaged in the mining of bauxite in Hungary, and in 1939 and 1940 guaranteed a loan by a Swiss bank to this corporation for its operations. The loan was repaid in November 1942. The United States was at war with Hungary from December 13, 1941. During October, November, and December 1941, the Hungarian corporation shipped bauxite to Germany and had a contract to do so until the end of 1942." 343 U. S. 205, 209–210.

At one time this Nation allowed such easy escape from the penalties of war, relying upon the ownership of corporate stock for protection.[3] *Behn, Meyer & Co.* v. *Miller*, 266 U. S. 457, demonstrated the futility of such a method of protection. It was to plug this loophole that the Congress enacted in 1941 the existing § 5 (b) of the Trading with the Enemy Act, authorizing the President to vest "any property or interest of any foreign country

---

[3] *Hamburg-American Co.* v. *United States*, 277 U. S. 138, 140.

or national thereof." [4]   It surely was not the purpose of Congress to leave the door halfway open.

## III.

The Court's holding disregards the normal incidents of corporate responsibility and frustrates the purpose of Congress to repair the gap in our defense policy toward alien property pointed out by our *Behn-Meyer* decision. The *Uebersee* case did not decide the issue here presented. It left open the effect of enemy ownership of minor interest in a foreign corporation but it would hardly have been thought until today that *Uebersee* left open the fate of the property of an enemy-dominated corporation, which corporation was part of a scheme, as shown in n. 2, "to avoid seizure and confiscation in the event of war." [5] Congress has indicated its attitude quite clearly.[6]   To-

---

[4] *Clark* v. *Uebersee Finanz-Korporation,* 332 U. S. 480, 483.   See note 3, p. 485, describing the maze of corporate schemes for enemy control of war economy.

[5] 332 U. S. at 489–490:

"It is suggested, however, that this approach may produce results which are both absurd and uncertain.   It is said that the entire property of a corporation would be jeopardized merely because a negligible stock interest, perhaps a single share, was directly or indirectly owned or controlled by an enemy or ally of an enemy.   It is also pointed out that securities or interests other than stock might be held by an enemy or ally of an enemy and used effectively in economic warfare against this country.   But what these interests are, the extent of holdings necessary to constitute an enemy taint, what part of a friendly alien corporation's property may be retained where only a fractional enemy ownership appears, are left undecided.   Since we assume from the allegations of the complaint that respondent is free of enemy taint and therefore is not within the definition of enemy or ally of an enemy, those problems are not now before us.   We recognize their importance; but they must await legislative or judicial clarification."

[6] 50 U. S. C. App. § 32:

"The President, or such officer or agency as he may designate, may return any property or interest vested in or transferred to the Alien

day's ruling cuts deeply into the congressional purpose to hold the property of enemy-tainted foreign corporations for satisfaction of war claims.

The result reached by the Court is brought about by a disregard of the ordinary incidents of the relation of a stockholder to a corporation. A stockholder has no present interest in the physical property of an unliquidated corporation. The corporation is responsible for the acts of the corporation.[7] The stockholder normally is not. By his contribution to capital and his participation in profits, he puts his investment at risk, according to the conduct of the corporation. He may have claims against management but those claims have nothing to do with corporate assets subject to the demands of creditors or governments. Those corporate assets grow or diminish because of corporate, not shareholder, conduct.[8] Surely, if a corporation violated the Sherman Act, its assets would be subject to the triple-damage claims of wronged competitors, even to its last cent and to the detriment of stockholders who may have protested vehemently but ineffectively against the illegal course of conduct. Surely

---

Property Custodian . . . whenever the President or such officer or agency shall determine—

.        .        .        .        .

"(2) that such owner, and legal representative or successor in interest, if any, are not —

.        .        .        .        .

"(E) a foreign corporation or association which at any time after December 7, 1941, was controlled or 50 per centum or more of the stock of which was owned by any person or persons ineligible to receive a return under subdivisions (A), (B), (C), or (D) hereof: . . . ."

(A), (B), (C) and (D) refer substantially to national, corporate or individual enemies.

[7] Cook, Corporations (8th ed.), vol. I, § 11; vol. III, §§ 663, 664.

[8] *Christopher* v. *Brusselback,* 302 U. S. 500, 503:

"A stockholder is so far an integral part of the corporation of which he is a member, that he may be bound and his rights foreclosed by

a corporate deed of the corporation's "interest, right, or title" to a piece of property would not leave in a stockholder any interest adverse to the grantee.

The Court finds justification for allowing a stockholder to sue in the language of § 9; the Court says the holding "is based on the Act which enables one not an enemy as defined in § 2 to recover any interest, right or title which he has in the property vested." No authority is cited for the proposition that a stockholder has an "interest," within the meaning of the Act, in the physical assets of the corporation, separate from the interest of the corporation. Corporations may recover on showing their nonenemy character, just as individuals may, but the corporate entity should not be disregarded without some evidence of such congressional intention. The language of § 9, "interest . . . in [the] property . . . seized," could not normally be taken to mean a stockholder's interest in the administration and profits of the corporation; [9] in our opinion it means an interest in the assets actually

---

authorized corporate action taken without his knowledge or participation. . . ."

See *Pink* v. *A. A. A. Highway Express,* 314 U. S. 201, 207.

*Anderson* v. *Abbott,* 321 U. S. 349, 361:

"Some shareholders of Banco claim the right to rescind their purchases of its shares on the ground of misrepresentations in the sale. But whether or not such relief might be granted in some instances, it seems clear that Banco's stockholders are bound by the decisions of the directors which determined, within the scope of the corporate charter, the kind and quality of the corporate undertaking."

[9] In the analogous law of prize, it is settled that the nonenemy stockholders of an enemy corporation have no right to recover any portion of seized property which was owned by the corporation. *The Polzeath,* [1916] P. 241, 256 (C. A.), affirming [1916] P. 117: ". . . the British shareholders are not entitled to intervene. It is suggested that the ship should be appraised, and that payment should be made to the British shareholders in proportion to their holdings. The Court has no such power; it cannot administer the affairs of the company. If any hardship is caused to innocent shareholders by the

seized. There is no indication that Congress intended that the mere vesting of the corporate assets by the Attorney General should confer upon each stockholder an enforceable interest in those assets.

Where the corporation subjects its assets to forfeiture by aiding our enemies, the corporation should pay the penalty. The friendly stockholder should not be permitted by strained statutory interpretation to withdraw his contribution to the funds that were used to our injury and so reduce the assets available for war claimants. We see no real difference, as to liability to have assets vested under the Trading with the Enemy Act, between a corporation enemy-dominated as this is alleged to be and an enemy-domiciled corporation producing munitions of war for use against the United States. The Court's opinion refers only to enemy-dominated neutral corporations but

declaration of forfeiture their position is that they can only appeal to the merciful consideration of the Crown."

*Steamship "Marie Glaeser,"* 1 Lloyd's Prize Cases 56, 111 (1914):

"Now, with regard to the shareholders in the vessel, it is quite clear that if they are enemy shareholders their property must go with the capture of the vessel in which they have put their money—a vessel sailing under the flag of the enemy. Not only is that so with regard to shareholders who might be citizens of the German Empire, but it is equally so if some of those shareholders happen to be, as they may be—I do not know—persons who are citizens of this country. If a shareholder invests his money by taking shares in a vessel which is liable to capture, he takes that risk.

"If in the case of a British shareholder he likes to present his case to the Crown as one which ought to be leniently dealt with, that is another matter. I have nothing to do with that. I am here only to administer the law, and I must hold that no shareholders have any right whatsoever to be protected from the results of the capture of this vessel."

*Standard Oil Tankers Case,* Arbitration Award, Aug. 5, 1926, II Foreign Relations of the United States (1926), p. 166. Cf. *The Pedro,* 175 U. S. 354, 367–368.

the theory of recovery for friendly stockholders appears to be equally applicable to friendly stockholders of enemy corporations.

The Court of Appeals should be affirmed.