See also 15 F.R.D. 83.

SOCIETE INTERNATIONALE POUR PARTICIPATIONS INDUSTRIELLES ET COMMERCIALES, S.A., etc., Plaintiff,

Eric G. Kaufman et al., Plaintiffs-Intervenors; Ernest Attenhofer et al., Plaintiffs-Intervenors,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, et al., Defendants.

Civ. A. No. 4360–48.

United States District Court District of Columbia.

Oct. 10, 1956.

John J. Wilson, Washington, D. C., for plaintiff.

Edmund L. Jones, and C. Frank Reifsnyder, Washington, D. C., for plaintiffs-intervenors Attenhofer.

Robert E. Sher, Isadore G. Alk and James H. Heller, Washington, D. C., and Irving Moskovitz, New York City, for plaintiffs-intervenors Kaufman.

David Schwartz, Sidney Jacoby and Paul McGraw, Dept. of Justice, Washington, D. C., for defendants.

PINE, District Judge.

Before me are three motions for preliminary injunctions. One is filed by plaintiff intervenors known as the Attenhofer group. They ask for an injunction restraining defendant Brownell from proceeding with a proposed plan to recapitalize or otherwise change the capital structure of General Aniline & Film Corporation. Another is filed by plain-

tiff intervenors known as the Kaufman group. They ask for an injunction restraining defendant from voting any of the stock of this corporation in favor of any plan of recapitalization or reclassification, specifically including the plan described in a notice of a special meeting of stockholders. Still another is filed by the plaintiff. It asks for an injunction restraining defendant from proceeding with the proposed plan to recapitalize and otherwise change the capital structure of this corporation as outlined in a notice and proxy statement.

The plan proposed, as set forth in the notice to stockholders, is to retire 2,043.-9 Common A shares and 950,000 Common B shares owned by the corporation, and reduce the capital of the corporation by $1,001,097.50, being the amount of capital represented by the shares so retired; to amend the certificate of incorporation to authorize 3,190,969 shares of new Class A common stock of the par value of $10 each, and 5,000,000 shares of new Class B common stock of the par value of $10 each; to reclassify each of the 592,742.1 Common A shares without par value, presently outstanding, into four shares each of new Class A common stock of the par value of $10 each; to reclassify each of the 2,050,000 Common B shares of the par value of $1 each, presently outstanding into 4/10 of a share of new Class A common stock of the par value of $10 each; and to reduce the present authorized capital stock by eliminating all the presently authorized Common A shares and Common B shares which are not outstanding. The reasons for the proposals, as set forth in the Proxy Statement, are that the corporation has no need for the Common A shares and Common B shares presently held in its treasury, and considers its corporate structure will be simplified if such shares are retired and if capital is reduced by the amount of capital represented thereby; that the present capital structure is unduly complicated, and the Board of Directors considers that it is to the advantage of the corporation that this be corrected; that

among other things the existing Common A shares are redeemable under certain conditions and have a limited preference on liquidation, after which they share equally with the Common B shares; that for each $1 of dividends paid on each Common A share dividends of 10 cents are paid on each Common B share; that Common A shares and Common B shares are each entitled to one vote per share; and that no change affecting the Common A shares may be made against the adverse vote of 25% of the outstanding Common A shares. It is further stated that the proposed reclassification will simplify and clarify the rights of stockholders, as the shares of the new Class A and Class B common stock will be identical except in respect of restrictions on ownership and transferability and in respect of convertibility.

As a result of the proposed reclassification of capital stock, according to the proxy statement, each existing Common A share will be changed into four shares of the new Class A common stock and each existing B share will be changed into 4/10 of a share of the new Class A common stock; that upon such reclassification, there will be outstanding 3,190,-968.4 shares of the new Class A common stock, and 5,000,000 authorized but unissued shares of new Class B common stock of which 3,190,969 shares will be reserved for the conversion, on a share for share basis, of shares of the new Class A common stock at the option of the holders thereof.

Attached to the proxy statement is a statement that the Attorney General is considering the sale of certain of the shares vested in him, that the proposed amendment to the certificate of incorporation has been approved and authorized by the Director, Office of Alien Property. This statement also provides that the shares of the new Class A common stock will be freely transferable, but the new Class B common stock will be restricted as to ownership and transfer to American nationals in accordance with the regulations of the Office of Alien Property Custodian.

The movants, as above stated, are the plaintiff, herein called Interhandel, and the intervenors above named. Interhandel claims to be the owner of 2,050,000 shares of Common B stock and 455,448 shares of Common A stock of General Aniline & Film Corporation, which defendant's predecessor vested under the Trading With the Enemy Act. Action for its recovery was instituted by Interhandel, but this action now has been dismissed with prejudice. It would serve no useful purpose to recount the various proceedings in this Court and in the appellate tribunals preceding this dismissal, nor the proceedings thereafter. The record speaks for itself, and on that record cogent argument has been made that plaintiff Interhandel, in its action, has no standing to seek an injunction in the present posture of the case. However, I am not required to reach that point, as the decision hereinafter set forth makes it unnecessary, and a ruling on the question will be deferred pending outcome of its present appeal.

There remain the claims of the intervenors. They allege that they are stockholders of plaintiff Interhandel, assert a non-enemy status, and seek their proportionate share of the seized property under the authority of Kaufman v. Societe, etc., 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853.

By reason of the vesting of the stock of General Aniline & Film Corporation, defendant's predecessor acquired all of the outstanding Common B shares and 455,624 shares of the Common A stock. In addition, he has acquired 65,085 shares of Common A stock in exchange for all the stock of General Dyestuff Corporation which he had vested from others, and 20,185 Common A shares vested from other sources and claimed to be enemy-owned. In all, he is custodian of 540,-894 shares. The remaining 51,848.1 outstanding Common A shares are held by the public, leaving 2,043.9 shares of Common A stock in the corporate treasury. Defendant, therefore, controls the corporation, and he intends to vote in favor of the proposed plan.

The question raised is whether the proposed plan, if consummated, violates Section 9(a) of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 9(a) which provides that "if suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian * * * as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied * * * or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

In other words, would the stock vested from Interhandel be "retained" under the proposed plan, within the meaning of the statute? Clearly it would not be retained in a literal sense. That is conceded, but defendant argues that it would be substantially retained, with no rights of real value lost, and that their plan is merely an act of administration of the property, dictated by good business practices and more particularly in order to provide a more attractive means for equity financing. Intervenors, however, contend that the plan would take from the existing stock valuable rights and change its nature and character, and that it therefore is forbidden by the statute requiring retention by defendant until final disposition of the action.

The authorities on this point have been collected, cited, and discussed in intervenors' briefs, and it is unnecessary to repeat them for the purpose of this memorandum. Suffice it to say that they hold that the defendant is under the duty to preserve the integrity of the seized property, once suit has been instituted.

In my opinion, the proposed plan is far from an exchange of one piece of paper for another, or an exchange similar to that of exchanging an amount of money for the same amount in different denominations, which appears to be the net result of defendant's argument. On the contrary, as I see it, the exchange would alter the rights and privileges pertaining to the stock in such a manner as to impair valuable rights and modify the present nature and character of the stock.

In other words, it would substitute one property right for a different property right, and cause irreparable injury to intervening petitioners. It would enhance the rights now incident to Common A stock to the detriment of the Common B stock. It does maintain the ratio of dividends of ten to one, presently in favor of the Common A stock, accomplished by, the giving of four shares of new stock for one share of present A stock, and the giving of $4/10$ of a share of new stock for the present B stock, and providing that the new stock shall share equally in dividends. But in so doing, it increases the voting rights of the present Common A stock and decreases the voting rights of the present Common B stock. The plan also abolishes the liquidation rights incident to Common A stock, the preemptive rights of Common B stock, and the redemption provision incident to Common A stock, which is advantageous to Common B stock.

The contention of defendant that the proposed plan is wise and desirable for future financing, in the opinion of experts, is not a legal reason for contravening the statute. The intervenors apparently have a different view of what is wise and desirable to be done with the property they claim to be their own, and are entitled to the protection of the statute.

Neither am I impressed by the argument of defendant that liquidation rights are of no value because liquidation at the moment appears to be remote. It is still a right, and whether remote or not (and none of us can see into the future), it is also one that deserves protection. I see no necessity for going into the question of what would happen today in case of liquidation, extensive arguments on which have been made based on book value and estimated value. The fact still remains that each share of present Common A stock, in case of liquidation, has a $75 preference, after which the assets are distributable in equal parts to holders of Common A and Common B shares, and this would be eliminated under the proposed plan with detrimental results.

Nor do I see validity in the argument of defendant that the change in voting rights is of no consequence. Under the proposed plan, Common A shares would be increased to four votes instead of one, and Common B shares would be reduced to $4/10$ of a vote instead of one. Moreover, the non-American intervenors now permitted to buy any newly issued shares, under the proposed plan would be prevented from purchasing any of the more than 1,800,000 new Class B shares, because they are to be restricted as to ownership and transfer to American nationals. Furthermore, if defendant should sell any of the non-Interhandel shares vested in him—and he is considering such a sale, according to the proxy statement—they would likewise be converted into the new Class B restricted common shares unavailable for purchase by the non-American intervenors. The practical effect of this would be further to impair intervenors' ability to protect their voting position in the corporation.

So far as preemptive rights are concerned, the present charter gives Common B shareholders the right to subscribe for additionally authorized common stock, over the presently authorized three million shares, at $1 per share. The defendant contends that the preemptive rights are without value because the chances of any newly authorized Common B stock ever being issued at $1 per share "are remote." The remoteness of a right would affect its value, but it is still one of the incidents of ownership.

Nor can I follow the argument that because Common A shares are not traded or listed on any stock exchange, the redemption right which is based on market price as shown by average quotations is illusory and without value. I cannot forecast that at a future date it will not be listed on a recognized stock exchange.

Lastly, I cannot read into Section 9(a) of the Trading With the Enemy Act, which provides for retention and which defendant does not claim has been repealed, the power to do what is proposed by virtue of the provisions of Sections 5 (b) and 12 of the Act, 50 U.S.C.A.Ap-

pendix, §§ 5(b), 12. If read as defendant contends, the "retention" provision would be nullified in cases like the instant one, wherein defendant wishes to change, as he does here, the basic stock structure of the corporation whose stock he has vested.

It should further be borne in mind that in this case the defendant has not planned to do as he proposes by reason of circumstances beyond his control, such as bankruptcy, perishability of the property vested, lack of control in putting the plan into effect. As above stated, the defendant here is in control of the corporation.

Under these circumstances, and balancing the equities, I reach the conclusion that an injunction should issue on behalf of the intervening plaintiffs against the defendant, as prayed. If counsel believe that further findings and conclusions of law are necessary in addition to those set forth herein, they will submit them on notice, along with a decree carrying the decision herein into effect. I shall also hear counsel on the question of bond.