278 F.2d 268
 107 U.S.App.D.C. 388
 William P. ROGERS, Attorney General of the United States, as
Successor to the Alien Property Custodian, et al.,
Appellants,
v.
SOCIETE INTERNATIONALE POUR PARTICIPATIONS INDUSTRIELLES ET
COMMERCIALES, S.A., etc., and Eric G. Kaufman, et
al., Appellees.
 No. 15017.
 United States Court of Appeals District of Columbia Circuit.
 Argued Jan. 15, 1960.
Decided April 14, 1960, Petition for Rehearing En banc
Denied May 11, 1960.
 
 Mr. Irving Jaffe, Attorney, Department of Justice, with whom Mr. Paul E. McGraw, Attorney, Department of Justice, was on the brief, for appellants.
 Mr. John J. Wilson, Washington, D.C., with whom Mr. William E. Rollow, Washington, D.C., was on the brief, for appellee Societe Internationale Pour Participations Industrielles et Commerciales, S.A., etc.
 Mr. Irving Moskovitz, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Robert E. Sher, Isadore G. Alk, and James H. Heller, Washington, D.C., were on the brief, for appellees Kaufman.
 Mr. Edmund L. Jones, Washington, D.C., with whom Mr. C. Frank Reifsnyder, Washington, D.C., was on the brief, for appellees Ernest Attenhofer, and certain other appellees.
 Mr. James J. Bierbower, Washington, D.C., entered an appearance for appellee Annemarie R. Klingler, and certain other appellees.
 Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 This unique case brought by a Swiss holding company sometimes known as I. G. Chemie or Interhandel (plaintiff), was instituted in October, 1948 under the Trading with the Enemy Act, 50 U.S.A.Appendix, 9(a), 40 Stat. 419, as amended, against the Attorney General, as successor to the Alien Property Custodian, and the Treasurer of the United States (herein Government). Hundreds of plaintiff's stockholders intervened.[1] Thereafter, many variously contested proceedings resulted in hearings before each of several District Judges. Chief Judge, Laws was finally impelled, sua sponte, to consider the appointment of a speical master. The record shows that he had consulted his District Judges and had canvassed his plan with counsel. He asked that Chief Judge Knox in the Southern District be consulted to ascertain his practice. Plaintiff's counsel objected to a reference of the case to a special master and formally opposed his appointment. It was argued that the many issues should be decided by a judge and that the reference was beyond the power of the court.
 
 
 2
 Chief Judge Laws ordered a pretrial hearing whereat counsel could be fully heard. The parties were requested to file proposed orders designed to accomplish the result outlined by Chief Judge Laws. The Government submitted its proposed order. It asked that there be included a provision that 'The master's report shall contain findings of fact and conclusions of law,' and further that 'The master's findings of fact shall have the force provided in Rule 53(e)(2).'
 
 
 3
 After considering the existence of need based upon the protracted testimony of witnesses in the United States as well as abroad, and other matters, and finding 'exceptional circumstances,' Chief Judge Laws on February 14, 1950 entered his order appointing as special master William J. Hughes, Esquire, to whom he referred 'the determination and findings of all issues of fact and law involved in said action * * *.'[2]
 
 
 4
 Plaintiff's counsel after the order was entered again noted objection to the reference and a year later sought to vacate and revoke the order. Thereupon the Government opposed the plaintiff's motion for revocation contending the the order was entirely proper 'in view of the exceptional circumstances of this case.' The Government's opposition further noted that 'Plaintiff confuses the reference of all issues with their reference for final decision. The reference of all issues is permissible, but it is not permissible to refer them for a final decision. * * * The specific mention of Rule 53(e)(2) in the order of reference made it clear that the court was not referring to the Master the making of a final decision. Since, under the order and the Rule, the Master's report will come back to the court for adoption or rejection, no impropriety was committed.' The court, adopting the position then urged by the Government, denied the plaintiff's motion to vacate the order. Thereafter the respective parties proceeded under the order of reference. More than 140 docket entries reflect various proceedings and the actions taken over the years.
 
 
 5
 On October 1, 1958, the Government moved that the reference be terminated on the ground that the District Court 'lacks authority to continue such reference.' Alternatively, it asked that the original order be modified 'to limit the sceop of the reference and the authority of the Master to the conduct and supervision of discovery proceedings authorized by the Court and depositions.' The latter motion came on before Chief Judge Pine who, substantially throughout the interim, had served as special judge. After full hearing and argument, an order was entered denying the Government's motion in its entirety. Judge Pine pronounced his opinion and found as his order recited, that the ruling properly should be reviewed forthwith as coming within the special class of interlocutory orders justifying an immediate appeal, pursuant to 28 U.S.C. 1292(b) (1958). We allowed this appeal accordingly and are satisfied that the case is properly here.[3]
 
 
 6
 The Government assails Judge Pine's order as an abuse of discretion. Relying largely upon La Buy v. Howes Leather Co.,[4] the Government argues that the factors there predicating the reference greatly outweighed those considerations which actuated Judge Laws' order of reference. In effect, it is thus argued if the La Buy situation could not support a reference as the Supreme Court said, the instant reference must fall.
 
 
 7
 Quite overlooked is the extreme Caution with which Judge Laws explored the situation here before he acted. Obviously familiar with the basic problem as his experience with earlier comparable cases had taught, he not only did not abdicate the judicial function, but contemplated that the parties should have recourse to the court as to the master's rulings. We think that factually, as we shall show, and under the law which is intended to govern the reference, the circumstances in the instant case are totally different from La. Buy.
 
 
 8
 As the Supreme Court observed in Societe Internationale, etc. v. Rogers,[5] 'This issue comes to us in the context of an intricate litigation.' We think that if ever there is to be a case presenting itself as 'the exception and not the rule,'[6] it is this one. At stake are claims evaluated at more than $100 million, consisting of cash in American banks and about 90% Of the capital stock of General Aniline & Film Corporation, control over all of which had been asserted by the Alien Property Custodian as assets 'owned by or held for the benefit of' I. G. Farbenindustrie, said to be a German enemy national. Before the Government in 1958 filed the motion now considered, various groups of intervenors, appellees here, over the years had presented their claims. Some 2,488 stockholders were claimants at one time or other, in fact the complaints of some 720 had been dismissed.[7] The action of the corporate appellee, the plaintiff, previously dismissed by us[8] was reinstated by the Supreme Court.[9] This is no La Buy case.
 
 
 9
 Moreover it is not always so, even when some doubt has been urged, that an order of reference must be vacated. In the Tendler case,[10] we noted that the master had conducted eleven hearings over a considerable period of time. Here the litigation has evoled over some twelve years, and rights and the status of many claims and the positions of the respective parties had turned upon what has been done. As Judge Pine observed, 'so many actions have been taken that to limit the scope as prayed would change the whole pattern of the proceedings and cause confusion and uncertainty in many aspects of this complicated case which are now impossible to visualize.'
 
 
 10
 The order of reference[11] expressly specifies that the master is to have only the powers and duties 'which by law may be conferred upon or exercised by a master.' We have heretofore recognized 'that it is the trial court in such a case who makes the final determination of all the issues. * * * And in no instance is (the judge) bound by the master's conclusions of law.'[12] In our case Judge Pine, as special judge, is and for ten years has been available upon proper application and showing by the parties to grant supervision as to any challenged action. The numerous occasions upon which recourse has been had to the courts demonstrate no lack of remedy if it be necessary to seek guidance.
 
 
 11
 Again, even as to the master's ultimate report, objections conformably to the Rule shall be subject to hearing, to modification, rejection and even to the receipt of further evidence.[13] Nor should it be overlooked that the evidence in the case is largely documentary. Of course, the trial judge in this equity action may apply the rule in United States v. United States Gypsum Co.[14] and so may we.[15]
 
 
 12
 Since we are satisfied for the reasons stated that there was no abuse of discretion by the trial judge, we need not consider the Government's claim that under the Rules no waiver here occurred. We note only that the appellees were the parties who ten years ago opposed and even later sought to revoke the order of reference. The Government then supported the order, as we have seen, and all parties have since acted pursuant thereto.
 
 
 13
 We find no error.
 
 
 14
 Affirmed.
 
 
 15
 FAHY, Circuit Judge (dissenting).
 
 
 16
 Insofar as the pretrial features of the case are concerned-- including discovery and the taking of depositions here and abroad with ruling incident to the conduct of those proceedings-- no modification of the reference of the case to the master is now pressed by appellants. But the reference also includes 'the determination and findings of all issues of fact and law involved in said action,' so that the master would actually try and initially decide the case. Our question is whether, on appellants' motion of October 1, 1958, the reference should be modified so that the master's duties would not include authority for making determinations and findings on all issues of fact and law. Nothing heretofore done by the master would be set aside by the modification requested. Nor would additional pretrial matters which lie in the future be removed from the master's jurisdiction. It is the actual trial itself, still to be held, that would be restored to the responsibility of the court.
 
 
 17
 At the time of the original reference the defendants who were the predecessors of the present appellants sought the reference in its broad scope. Appellees then opposed it. Thus, the positions of the parties have changed. Appellants now seek modification; appellees now defend the reference in its original scope. I attach little importance to this reversal of positions, especially as the modification now sought would not undo that past, or indeed alter the future course of the case except as to the basic determinations and findings. These I think should be made initially by the court, not by a master whose findings of fact would bind the court unless clearly erroneous. Rule 53(e)(2), Fed.R.Civ.P.
 
 
 18
 I am not able to reconcile the contrary view with the decision of the Supreme Court in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290, rendered subsequent to Chief Judge Laws' order of reference. In La Buy the Court upheld the Court of Appeals in using the extraordinary writ of mandamus to require a District Judge to vacate orders of reference in an antitrust action. The references covered the taking of evidence, trial of the case, and the preparation of findings of fact and conclusions of law. In holding that the District Court had abused the discretion available to it under Rule 53(b), the Court said the references
 
 
 19
 'amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.'[1]
 
 
 20
 Moreover, no exceptional circumstance within the meaning of Rule 53(b) was found in La Buy to reside in court congestion in itself, as to which the Court said,
 
 
 21
 'if such were the test, present congestion would make references the rule rather than the exception.'
 
 
 22
 352 U.S. at page 259, 77 S.Ct. at page 315. Nor did the fact that the case had 'unusual complexity of issues of both fact and law,' or the circumstance that the trial would be prolonged, create 'some exceptional condition' within the meaning of the reference Rule. As to those characteristics of the case the Court said:
 
 
 23
 'But nost litigation in the antitrust field is complex. It does not follow that antitrust litigants are not entitled to a trial before a court. On the contrary, we believe that this is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis and ordinarily not experienced in judicial work. Nor does petitioner's claim of the great length of time these trials will require offer exceptional grounds.[2]
 
 
 24
 When I apply these principles to our case I am unable to make a reasoned distinction in favor of the broad scope of the present reference. Indeed, this case seems more clearly than La Buy one for trial by and in a federal court, rather than by a master, especially under the limitations a trial by a master would impose upon the final conclusions of the court as to the facts, by reason of Rule 53(e)(2).
 
 
 25
 The case is one of large importance, with international as well as domestic ramifications.[3] The sound solution would seem to be to permit the master to conclude the pretrial proceedings, with such court supervision as from time to time may be necessary, and then for the trial itself to come on before the court. While the case has exceptional features, and the aid of the master I think is properly utilized, there is no such exceptional condition affecting the basic issues to be determined, chiefly that of enemy taint, as justifies the court in referring those issues to the master.
 
 
 26
 The clear teaching of La Buy, as it seems to me, is that 'some exceptional condition,' as that restrictive term is used in Rule 53, is not met by a showing that the case is an exception to the general run of litigation in that it is complex and will take a great deal of time.[4] Nor, as we have seen, does court congestion in itself create the exceptional condition essential to support a reference. A condition which justifies a reference, either of the whole or a part of a case, must be exceptional in the sense of being peculiarly appropriate for initial disposition by a master, rather than being of a nature inherently and predominantly appropriate for the exercise of a court's own decisional function. The case of Tendler v. Jaffe, 92 U.S.App.D.C. 2, 203 F.2d 14, certiorari denied 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344, is perhaps illustrative of a proper reference, though that case too was decided before La Buy. Rule 53 itself is also suggestive in its mention of accounting as an appropriate matter for reference. One need not attempt in the abstract to enumerate illustrations, for the problem before us is a concrete one. As to that problem, I do not find any exceptional condition which justifies turning to a master for determinations or findings with respect to the basic issues in the case. Those are for decision by the court, free of the 'clearly erroneous' restriction of Rule 53(e)(2). In the end this would be the most satisfactory manner of disposing of this case, and I think it is as well the required manner.
 
 
 27
 I would reverse and remand.
 
 
 
 [1]
 As appellees they presently appear in three groups, formed pursuant to the Supreme Court's decision in Kaufman v. Societe Internationale, 1952, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853. Some understanding of the nature of the issues still largely unresolved may be gleaned from that opinion
 
 
 [2]
 The order of reference further read:
 'The Master shall have all the powers and duties which by law may be conferred upon or exercised by a master. His findings of fact shall have the force provided in Rule 53(e)(2) of the Federal Rules of Civil Procedure. He shall hear and pass upon all motions hereafter filed except motions to vary orders already made, motions to punish for contempt, or other motions which would change the nature of the action or of this reference. He shall attend the taking of all depositions and discovery proceedings where witnesses are to be examined, except upon written stipulation of counsel or order of Court. He shall also have power to determine the time of taking depositions and resuming the deposition of Hans Sturzenegger now suspended.'
 
 
 [3]
 Cf. Milbert v. Bison Laboratories, 3 Cir., 1958, 260 F.2d 431
 
 
 [4]
 1957, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290. There the Court was concerned with the power of a Court of Appeals to issue its writ of mandamus to compel a District Judge to vacate certain orders of reference
 
 
 [5]
 1958, 357 U.S. 197, 198, 78 S.Ct. 1087, 1089, 2 L.Ed.2d 1255
 
 
 [6]
 Fed.R.Civ.P. 53(b), 28 U.S.C
 
 
 [7]
 Further particulars may be perceived in Kaufman v. Brownell, 101 U.S.App.D.C. 147, 247 F.2d 553, certiorari denied 1957, 355 U.S. 842, 78 S.Ct. 48, 2 L.Ed.2d 51
 
 
 [8]
 Societe Internationale, etc. v. Brownell, 1957, 100 U.S.App.D.C. 148, 243 F.2d 254
 
 
 [9]
 Supra note 4; and see as to other complications reaching the courts, cases cited in Kaufman v. Brownell, supra note 7
 
 
 [10]
 See Tendler v. Jaffe, 92 U.S.App.D.C. 2, 203 F.2d 14, certiorari denied 1953, 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344
 
 
 [11]
 Supra note 2
 
 
 [12]
 D.M.W. Contracting Co. v. Stolz, 1946, 81 U.S.App.D.C. 334, 336, 158 F.2d 405, 407, certiorari denied 1947, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286
 
 
 [13]
 Fed.R.Civ.P. 53(e)(2). And see note 2 supra, and 5 Moore, Federal Practice 2968 et seq. (1951)
 
 
 [14]
 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746
 
 
 [15]
 Dollar v. Land, 87 U.S.App.D.C. 214, 217, 184 F.2d 245, 248, certiorari denied 1950, 340 U.S. 884, 71 S.Ct. 198, 95 L.Ed. 641
 
 
 [1]
 352 U.S. at page 256, 77 S.Ct. at page 313. Mr. Justice Brennan wrote a dissenting opinion in which Mr. Justice Frankfurter, Mr. Justice Burton and Mr. Justice Harlan joined. The dissent, however, was limited to the use of the extraordinary writ of mandamus at an interlocutory stage of the case-- a question not involved in the instant case, since the interlocutory appeal is before us in appropriate manner under 28 U.S.C. 1292(b) (1958)
 
 
 [2]
 352 U.S. at page 259, 77 S.Ct. at page 315. The Court agreed, however, that the detailed accounting required in the case to determine the damages suffered by each plaintiff might be referred to a master after the court had determined the question of liability of all defendants, 'provided the circumstances indicate that the use of the court's time is not warranted in receiving the proof and making the tabulation.' Ibid
 
 
 [3]
 For the prior judicial history of the litigation see Societe Internationale, etc. v. McGrath, 86 U.S.App.D.C. 157, 180 F.2d 406; Kaufman v. Societe Internationale, 88 U.S.App.D.C. 296, 188 F.2d 1017, reversed 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853; Societe Internationale, etc. v. Brownell, 96 U.S.App.D.C. 232, 225 F.2d 532, certiorari denied 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818; Societe Internationale, etc. v. Brownell, 100 U.S.App.D.C. 148, 243 F.2d 254, reversed sub nom. Societe Internationale, etc. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255; Kaufman v. Brownell, 101 U.S.App.D.C. 147, 247 F.2d 553, certiorari denied 355 U.S. 842, 78 S.Ct. 48, 2 L.Ed.2d 51; Interhandel Case, (1959) I.C.J.Rep. 6
 
 
 [4]
 A great deal of time is in fact being saved by the proper use of the master in the pretrial proceedings