**SOCIETE INTERNATIONALE, etc.,**
Plaintiff,

v.

**Robert F. KENNEDY et al., Defendants.**
**Civ. A. No. 4360–48.**

United States District Court
District of Columbia,
Civil Division.
June 30, 1964.

Oliver Gasch, Washington, D. C., for Eric G. Kaufman.

Samuel Becker, Washington, D. C., for Counsel of Record for the Kaufman intervenors.

Robert M. Hausman, Washington, D. C., for Robert A. Schmitz.

John J. Wilson, Washington, D. C., for plaintiff.

Lawrence A. Klinger, Dept. of Justice, Washington, D. C., for defendants.

PINE, District Judge.

From time to time over the past sixteen years this action has occupied the attention of this Court and its Special Master, the United States Court of Appeals for the District of Columbia Circuit, and the Supreme Court of the United States. In April of this year it was finally brought to a close. This was accomplished by the entry into a Stipulation of Settlement between plaintiff and defendants, consented to by all the intervenors except a minuscule number, whose rights have been adequately safeguarded, and the filing of praecipes of dismissal with prejudice by the consenting intervenors. The records of this Court have been filled with many volumes of pleadings, thousands of pages of transcript, countless briefs and numerous opinions of the Courts involved. The history of this case gives color to the utterance of a cynical wag that the legal complexities increase in proportion to the amount of money involved; and here the money involved amounts to many millions of dollars.

However, for the purpose of the motions now before me, the issues can be stated in a few sentences, as follows:

The Alien Property Custodian, acting under the Trading With The Enemy Act,[1] vested in himself the American assets of a Swiss corporation known as Societe Internationale Pour Participations Industrielles et Commerciales, S. A., et al. Throughout the litigation this corporation has been frequently referred to as Interhandel, and is referred to as Interhandel herein. These assets consisted of more than 90% of the capital stock of General Aniline and Film Corporation of Delaware and certain bank accounts. Interhandel brought action in this Court to recover these assets claiming they were illegally seized, and the Attorney General, succeeding to the powers of the Alien Property Custodian, answered claiming that Interhandel was controlled by officers and stockholders who were engaged in a conspiracy with the German Government and German nationals to conduct the business of General Aniline and Film Corporation in their interest during the war with Germany, and that, therefore, the vesting was authorized by law.

Intervenors are stockholders of Interhandel who admitted the claim of defendants and the right of the Custodian to

1. 50 U.S.C.App. 5(b).

retain an interest in these assets proportional to the stock ownership of enemy stockholders. They contended, however, that they and other non-enemy stockholders had claims on these assets which it was Interhandel's duty to protect, and that the dominant enemy group in the corporation would not press the corporate claim in a manner that would adequately protect the claims of innocent stockholders.

The basic issue raised by the petition for intervention was what part of the assets of a corporation organized under the laws of a neutral country may the custodian retain where part of the corporate stock is owned by enemies, part by American citizens, and part by non-enemy aliens. The Supreme Court held that when the Government seizes assets of a corporation organized under the laws of a neutral country, the rights of innocent stockholders to an interest in the assets proportionate to their stockholdings must be fully protected.[2]

The foregoing is only a brief statement of the issues involved in this litigation, but is sufficient for consideration of the motions now before me, which I shall take up separately, as follows:

The first is a motion by Eric G. Kaufman. He has consented to the stipulation above referred to, and has filed a praecipe of dismissal with prejudice. He has never appeared as counsel in this case, but as an intervenor only.

In his present motion filed after the dismissal with prejudice of his original petition to intervene, as above stated, he moves "for leave to intervene as counsel *pro hac vice* for Kaufman intervenors in order to assert the circumstances under which Irving Moskowitz, Esq., was retained as counsel to represent Kaufman intervenors." To his present motion he attaches a "motion for interlocutory relief" in which he states that he was one of the original intervenors in this action, and prior to his intervention had performed extensive and exhaustive research as to the manner in which the rights of

non-enemy stockholders might be protected; that following this research he entered into a contract with Irving Moskowitz, Esq., by the terms of which Mr. Moskowitz agreed that he should receive "25% of our total gross fees;" that he understands that the amount agreed upon between Interhandel and counsel for the Kaufman group (including Mr. Moskowitz) is "$800,000 for fees alone;" and that although he has a 25% interest in the fees agreed upon between Mr. Moskowitz and his associates "as counsel for the Kaufman group" he has not been able to persuade Mr. Moskowitz to abide by the terms of his agreement. He prays that the Court require the distribution of fees "allotted for counsel for Kaufman intervenors" in accordance with the agreement referred to, and that it issue a rule directing Mr. Moskowitz and his associate counsel to show cause why the agreement should not be honored and enforced. In an affidavit attached to his moving papers he states he is admitted to practice as an attorney in the courts of New York State and is a member of the Bar of the Supreme Court of the United States; that he is the owner of 6 shares of Interhandel and the members of his immediate family own 80 shares in addition thereto; that he commenced extensive legal research with a view toward protecting the stock owned by him, his family, and those similarly situated, namely non-enemy shareholders, and that in 1950 he retained the firm of Graubard and Moskowitz to represent his family and him insofar as their shares are concerned, as well as those similarly situated. With his moving papers he attaches copies of correspondence between Graubard and Moskowitz and himself supporting his claim to receive 25% of the total gross fees. He also attaches copies of correspondence between Graubard and Moskowitz and Robert Sher and Isadore Alk. The latter two were retained as Washington counsel by the former, who were not members of the bar of the District of Columbia. Messrs. Sher and

2. Kaufman v. Societe Internationale, etc., 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853.

Alk succeeded Messrs. Kominers and Fisher, who had previously been retained by Graubard and Moskowitz as Washington counsel.

█ The question is whether he may now intervene in this action to assert his claim to 25% of the fee agreed to be paid to his own counsel under a private out-of-court agreement between Interhandel and his counsel, or whether he should be remitted to a separate action against his counsel to enforce his contractual claim.

In the first place, there is no proceeding pending in this Court in which he may intervene, since the petition for intervention to which he was a party has, as above stated, been dismissed with prejudice. Therefore, Barnes v. Alexander, 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 and the other cases cited by petitioner are not apposite. In those cases there were proceedings pending in court. He disavows any claim against Interhandel (T. pp. 82, 84).

In the second place, any moneys to be paid in the future to Mr. Moskowitz and his associates by Interhandel are not a fund before the Court. By his own statement they constitute moneys that will be paid by Interhandel as a result of a private agreement reached between Interhandel and Mr. Moskowitz and his associates.

As stated by the Special Master in this case, in an opinion confirmed by this Court on July 23, 1952, it cannot "be said that in any real sense property in the possession of the Alien Property Custodian [as here] is 'in the custody or subject to the control or disposition of the Court.'"

In its Memorandum Opinion of October 17, 1963, this was made clear by this Court when it stated that the responsibility for an amicable settlement of the case, if that was desired by the parties, resides in the parties themselves and their counsel who are all *sui juris*, and who possess an intimate familiarity with the issues of law and fact involved in the litigation growing out of their years of association with its details and ramifications. Such a settlement necessarily would include a settlement of counsel fees.

In the third place, Kaufman cannot intervene of right under Rule 24(a), Fed. R.Civ.P., because he does not come within any of the categories giving such right, and cannot intervene under Rule 24(b), Fed.R.Civ.P., relating to permissive intervention for the same reason.

In the fourth place and finally, intervention must be denied him for the reason that § 9(f) of the Trading With The Enemy Act, supra, provides that "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court." The claim of movant does not come within any exception provided in the Act; and the legislative obstacle specifically contained in § 9(f), supra, was clearly recognized and enforced in Berger v. Ruoff, 90 U.S.App. D.C. 276, 195 F.2d 775, and in Von Opel v. Uebersee Finanz Korporation, 96 U.S. App.D.C. 230, 225 F.2d 530, hereinafter discussed.

For the foregoing reasons the motion of Eric G. Kaufman for leave to intervene must be denied.

### II

The second motion is by Robert A. Schmitz, who appears from the papers to be a resident of Connecticut. He moves "for an Order joining him as a party plaintiff or, in the alternative, pursuant to Rule 24(a) and (b) for leave to intervene as a plaintiff, in order to assert the claims set forth in his proposed complaint."

Briefly stated, he asserts that Dr. Alfred Schaefer, acting for Interhandel, in October 1959 agreed to pay him 5% of any moneys which Interhandel should receive in settlement of its dispute with the United States "for bringing about Mr. Wilson's (Charles E. Wilson's) trusteeship" of Interhandel, and also in *quan-*

*tum meruit* for services performed by him for Interhandel which he estimates have a reasonable value of $150,000.

He asserts that Mr. Charles E. Wilson was to receive no compensation for his services and the only compensation which Interhandel undertook to pay was compensation to him, movant Schmitz; that Mr. Wilson sought to carry out his functions as trustee after accepting his trust powers on May 23, 1960, but in 1961 Interhandel directed the trustee to suspend negotiations with the United States Government, and in November 1962 Mr. Wilson resigned his trusteeship, and that the activities of the trustee, Mr. Wilson, contributed to the disposition of the Government to enter into a settlement with Interhandel. Interhandel disputes these claims in their entirety, and contends that movant stands before the Court as a plaintiff seeking an *in personam* judgment against a foreign corporation without service of process.

This movant has come into this case for the first time by the filing of the above described motion after the plaintiff and defendants have entered into a Stipulation of Settlement, and the sole question before the Court is whether he may now litigate *in this action* his claims against Interhandel.

At the outset, it might well be questioned whether his activities, as above set forth, which would seem to be those of a "finder" as it is colloquially described, come within the purview of compensable services recognized by the Trading With The Enemy Act, but it is not necessary to reach a conclusion on that point, for the following reasons:

 Sec. 9(a) of the Trading With The Enemy Act, provides that any person not an enemy, or ally of an enemy, claiming interest in vested property may file a claim or bring a suit for the return of the property. This is the exclusive remedy provided by the Statute to make a claim for an interest in vested property (Kennedy v. Union & New Haven Trust Company, 2 Cir., 296 F.2d 655), and this action was brought under Sec.

9(a). Movant had no interest in the property now held by the Attorney General at the time of vesting, and could not have obtained any interest therein from plaintiff thereafter, because upon vesting the Attorney General "succeeds to all rights in the property." Commercial Trust Company of New Jersey v. Miller, 262 U.S. 51, 56, 43 S.Ct. 486, 67 L.Ed. 858; Cummings v. Deutsche Bank, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545. He therefore, can not be a *party plaintiff* in this action, and the Court lacks jurisdiction to entertain his claim.

Moreover, his claim to intervention, if based upon a lien on the vested property, (and the cases relied on by movant in large part are based upon a lien) is specifically barred by § 9(f) of the Trading With The Enemy Act, which provides that the property vested "shall not be liable to lien, attachment, * * * or subject to any order or decree of any court." In construing this Section the Court of Appeals for this jurisdiction in Von Opel v. Uebersee Finanz Korporation, supra, held in a case involving a claim by a statutory receiver to recover an interest in vested property that Congress had made no provision for the disposition of a suit of that kind in the Trading With The Enemy Act, that she could not intervene, and that litigation under the Act is limited to that which the Act permits. This case is likewise authority for the conclusion reached in the next preceding paragraph. Also, in Berger v. Ruoff, supra, an action brought by an attorney to intervene to enforce a lien for his fee for services rendered to a claimant under this Act, a much stronger case than movant's, where the plaintiff came clearly within the purview of the class entitled to fees, the Court held that the language of this Section forbade the impressing of any lien on the property.

The Stipulation of Settlement provides that after certain actions shall have been taken, plaintiff and defendants will present to the Court a consent judgment, or if such judgment is not entered, plaintiff and defendants will file dismissals of the complaint and counterclaims, re-

spectively, with prejudice. No judgment has been presented. Previously this Court has questioned its necessity and propriety, has indicated its predisposition not to enter one, and has suggested to counsel that all that is necessary for the termination of this action of record is the filing of praecipes of dismissal as provided in the Stipulation of Settlement. Indeed, the Stipulation of Settlement was amended to include this alternative method of termination at the Court's suggestion. Therefore, the entry of a judgment in the future cannot be assumed as a premise.

The Stipulation of Settlement provided that certain actions were to be taken by the parties. Among them was a provision that Interhandel will submit satisfactory evidence as required by § 20 of the Trading With The Enemy Act, that the aggregate of all fees does not exceed the limitation imposed by this Act. Whether there is any necessity for such provision in the Stipulation has likewise been questioned by the Court, inasmuch as the settlement which has been entered into is an out-of-court, inter-party disposition of the case without approval or disapproval by the Court. Sec. 20, supra, provides that "no property or interest or proceeds shall be returned under this Act * * * nor shall any payment be made or judgment awarded, * * * unless satisfactory evidence is furnished to the President or such officer or agency as he may designate, or the Court, as the case may be, that the aggregate of the fees to be paid to all agents, attorneys at law or in fact, or representatives, for services rendered in connection with such return or payment or judgment does not exceed 10 per centum of the value of such property or interest or proceeds or of such payment."

Absent a judgment, as to which, as above stated, this Court questions the necessity and propriety, it would appear that satisfactory evidence referred to should be furnished to the President or such officer or agency as he may designate and not to the Court. If a judgment should be entered, then, and only then, before its entry, the Court under this § 20 must have satisfactory evidence that the fees do not exceed the maximum amount.

There would appear to be no reason or basis for the submission of such evidence unless the Court is called upon to take some action in connection with the case, or unless the parties wish to file such evidence for record purposes. There is no provision other than the one above referred to relating to fees, except in the case of a claim for an amount in excess of the maximum. Then, upon petition, the Court in the District *where claimant resides* is authorized to allow an amount in excess of the maximum upon a finding of special circumstances of unusual hardship. No such claim is before the Court, and movant does not satisfy the residential requirements. Sec. 20 is not a provision for the *judicial* determination of fees, as movant seems to assume, but is a statute to protect the owner of seized property from unreasonable or extortionate charges in seeking its recovery. (Kroll v. McGrath, 91 U.S.App.D.C. 172, 199 F.2d 187.) It, therefore, provides no basis for intervention.

Movant also claims that he should be allowed to intervene either as of right or permissively, under Rule 24(a) and (b), Fed.R.Civ.P. For the reasons above set forth he cannot intervene as a plaintiff in this action, and it would serve no useful purpose to point out the many other obstacles in his path to such intervention, as they are patently apparent in the language of the rule itself and in the authorities construing it. Neither is there any merit to his contention that he should be joined as an indispensable party pursuant to § 19(a), Fed.R.Civ.P.

For all these reasons the motion of Robert A. Schmitz must be denied.