**FEYERABEND v. McGRATH, Atty. Gen., et al.**

**No. 10729.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1951.

Decided May 17, 1951.

---

George Eric Rosden, Washington, D. C., for appellant.

Walter T. Nolte, Attorney, Department of Justice, Washington, D. C., with whom Asst. Atty. Gen. Harold I. Baynton and George B. Searls, Attorney, Department of Justice, Washington, D. C., were on the brief, for appellees.

George Morris Fay, U. S. Atty. and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., also entered appearances in behalf of appellees.

Before EDGERTON, CLARK, and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

Appellant sued in the District Court for return of property vested under the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 5(b). A summary judgment was entered in appellees' favor. Undisputed facts in the record reveal that appellant was a native-born citizen of the United States; that in 1904 she married a German citizen; that ever since the marriage she has lived in Germany, and that the vested property was inherited from her parents. She based her suit for its recovery upon §§ 9(a) and 9(b)(3) of the Act.

The right to sue under § 9(a) is extended only to a person "not an enemy or ally of enemy." Enemy, as defined by § 2 (a), is "Any individual * * * of any nationality, resident within the territory * * * of any nation * * * with which the United States is at war * * *." This includes citizens of the United States. Salvoni v. Pilson, 1950, 86 U.S.App.D.C. 227, 181 F.2d 615, certiorari denied, 1950, 339 U.S. 981, 70 S.Ct. 1030; McGrath v. Zander, 1949, 85 U.S.App.D.C. 334, 177 F. 2d 649; United States v. Krepper, 3 Cir., 1946, 159 F.2d 958, certiorari denied, 1947, 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275; Josephberg v. Markham, 2 Cir., 1945, 152 F.2d 644. So, even if appellant be, as she claims, a citizen of the United States as well as of Germany (a point we do not decide), she would not for that reason alone be qualified to sue.

Although admitting continuous residence in Germany since 1904, she attempts to overcome the statutory bar against suits by "persons resident within enemy territory" with the novel contention that at the time of the vesting orders, 1947 and 1948, she was residing in Bavaria, and that this German state ceased to be enemy territory

after Germany's surrender (1945) because of its occupation by American forces. We do not agree with the contention. Bavaria became enemy territory upon outbreak of the war in 1941, and so continues to this day. Ludecke v. Watkins, 1948, 335 U.S. 160, 166, 170, 68 S.Ct. 1429, 92 L.Ed. 881. Our army is there, upon enemy soil, to keep victory secure pending negotiations for a formal peace. See Salamandra Ins. Co. v. New York Life Ins. & Trust Co., D.C.S.D.N.Y. 1918, 254 F. 852, 861, Judge Knox. In Fleming v. Page, 1850, 9 How. 603, 615, 13 L.Ed. 276, the Court had before it the status of the port of Tampico while occupied by United States forces during the Mexican war. Chief Justice Taney, speaking for the Court said: "While it was occupied by our troops, they were in an enemy's country, and not in their own; the inhabitants were still foreigners and enemies * * *."

It is clear, therefore, that the mere cessation of the fighting in Germany, and occupation of Bavaria by United States forces did not change the status of that state as "enemy territory." Furthermore, the Act itself, § 2, defines "end of the war" as the "date of proclamation of exchange of ratifications of the treaty of peace, unless the President shall, by proclamation, declare a prior date * * *." Obviously, therefore, without any such proclamation, a state of war still exists and Bavaria continues to be enemy territory within the meaning of the Act.

It seems equally clear to us that appellant has no right to sue under § 9(b)(3). We agree with appellees' contention that § 9(b)(3) was temporary legislation applicable only to property seized during World War I. That, we think, is the only conclusion to be drawn from Markham v. Cabell, 1945, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165, which upholds a similar contention as to § 9(e). Both the majority and concurring opinions point to certain "hallmarks" in the legislative language of § 9(e) which clearly relate only to World War I. Sections 9(b)(3) and 9(e) originated as parts of a single enactment, 41 Stat. 977, Act June 5, 1920, 50 U.S.C.A.Appendix, §§ 9(b)(3), 9(e). In both we find equally certain "hallmarks" pointing only to World War I. Such are the provisions in § 9(b)(3), restricting claims to female citizens of the United States, who married subjects of Germany or Austria-Hungary before April 6, 1917, and excluding property acquired from any subject or citizen thereof after January 1, 1917. Those dates have no possible relevancy to World War II, but do have a positive relevancy to World War I. They plainly stamp § 9(b)(3) as applicable only to property seized during that war, and we so hold.

Affirmed.