N. V. HANDELSBUREAU LA MOLA, Appellant,

v.

Robert F. KENNEDY, Attorney General of the United States, as successor to the Alien Property Custodian, Appellee.

No. 16417.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 18, 1961.

Decided Feb. 1, 1962.

Mr. Dinsmore Adams, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Lawrence S. Lesser, Washington, D. C., was on the brief, for appellant.

Miss Joan T. Berry, Department of Justice, with whom Asst. Atty. Gen., William H. Orrick, Jr., David C. Acheson, U. S. Atty. and John G. Laughlin, Jr., Department of Justice, were on the brief, for appellee. Messrs. Arthur R. Schor and Walter T. Nolte, Department of Justice, also entered appearances for appellee.

Before EDGERTON, PRETTYMAN and FAHY, Circuit Judges.

FAHY, Circuit Judge.

Appellant filed suit in the District Court, relying for jurisdiction upon section 9(a) of the Trading with the Enemy

Act,[1] to recover property vested under the Act by appellee's predecessor as Alien Property Custodian.[2] The property consists of assets of appellant which were on deposit in banks in the United States. By the order now on appeal District Judge Walsh granted appellee's motion for summary judgment. We agree that the suit may not be maintained.

One cannot maintain a suit under section 9(a) to recover vested property unless the claimant is "not an enemy or ally of enemy," to quote the language of the section. "Enemy" is defined in section 2 of the Act as follows:

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory." [3]

This definition includes a corporation incorporated within any territory which is occupied by a nation with which the United States, at the time of the occupation, "is at war." Concededly the Netherlands was occupied by military forces of the enemy of the United States during World War II, and concededly al-so throughout the occupation period appellant was a corporation organized and existing by virtue of the laws of the Netherlands. Appellant accordingly acquired enemy status. It correctly points out, however, that the vesting order was not made until December 15, 1950. It contends that enemy status which bars recovery of property under section 9(a) must be determined as of the time of the vesting order, and that on December 15, 1950, the occupation had ended and hostilities had ceased, with the effect of ridding appellant of its previous enemy status.

We are not in agreement with the above contention. The war had not ended when appellant's property was vested, or until the Joint Resolution of Congress of October 19, 1951.[4] In this Resolution Congress provided that property which had been subject to vesting and seizure prior to January 1, 1947, would continue to be subject to the provisions of the Act. This included appellant's property, for during the occupation which preceded January 1, 1947, that property had clearly been subject to vesting and seizure. And it had not lost its status by the ending of hostilities prior to January 1, 1947. Cf. Feyerabend v. McGrath, 89 U.S.App.D.C. 33, 35, 189 F.2d 694, 696.

The purposes of the Act are not fulfilled if all vesting and seizure must be accomplished during hostilities or enemy occupation. Property subject thereto during an occupation is available to control of the enemy in aid of its warfare against the United States and its

1. 40 Stat. 411 (1917), as amended, 50 U.S.C.App. §§ 1–40, 50 U.S.C.A.Appendix §§ 1–40.

2. The powers and functions of the Alien Property Custodian were transferred on October 15, 1946, to the Attorney General. Executive Order 9788, 3 C.F.R. 575 (1943–1948), 50 U.S.C.A.Appendix § 6 note.

3. 40 Stat. 411 (1917), as amended, 50 U.S.C.Appendix, § 2(a), 50 U.S.C.A.Appendix, § 2(a).

4. In declaring the end of World War II Congress provided that,

"notwithstanding this resolution * * any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 * * * or which has heretofore been vested or seized under that Act * * * shall continue to be subject to the provisions of that Act * * *."

65 Stat. 451 (1951), 50 U.S.C.Appendix note preceding § 1, 50 U.S.C.A.Appendix note preceding § 1.

allies. However, actual vesting might not then be possible. For example, the Custodian might not discover the property during the period of enemy occupation or, if discovered during such period, investigation might entail a considerable period of time before a determination is made that the property is owned or controlled by an enemy within the meaning of section 2 and therefore subject to seizure. Its usefulness to the enemy is not thereby obviated. Rather the contrary. Yet to immunize it because for some reason the vesting authority failed to reduce it to possession until hostilities have ceased, or the occupation ended, would leave untouched property which had been available to enemy control. Such immunization would also deprive the United States of valuable means of supporting its own war efforts. Those efforts, and the heavy responsibilities consequent upon a war, persist long after hostilities have ceased and occupied countries have been freed of the enemy.

For reasons thus suggested we think that in the absence of clearer language indicating the necessity for a different construction the enemy status appellant acquired during the occupation continued, insofar as section 9(a) is concerned, to the time of the vesting order; that is, we think that at that time the end of hostilities and of the occupation of the Netherlands had not removed appellant from the technical enemy status it had acquired during the occupation. Orme v. Northern Trust Co., 410 Ill. 354, 102 N.E.2d 335 (1951), cert. denied, Hardenberg v. McGrath, 343 U.S. 921, 72 S.Ct. 677, 96 L.Ed. 1334. If this is so then appellant was an enemy within the meaning of section 9(a) when it filed the present suit.

Stated in a different manner, the definition of enemy in section 2 of the Act, as one who is "resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war" or "incorporated within such territory" is not to be construed as referring only to one who at the date of the vesting order is a resident of or chartered by a nation with which the United States "is [still] at war"; rather, it is to be construed as including a person who or corporation which, at the time of the vesting order, is one who has been a resident of an enemy occupied nation during its occupation or was then incorporated under the laws of an occupied territory and resident therein. "The word 'enemy' * * * of course refers to the person who or corporation which fulfilled the definition of an enemy during the war." Swiss Nat. Ins. Co. v. Miller, 267 U.S. 42, 45, 45 S.Ct. 213, 214, 69 L.Ed. 504. And lending some support to the position we take is Hansen v. Brownell, 98 U.S.App.D.C. 239, 234 F.2d 60. And see Bank Voor Handel En Scheepvaart, N. V. v. Kennedy, 109 U.S.App.D.C. 391, 288 F.2d 375, cert. denied, 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254. Compare, however, Willenbrock v. Rogers, 255 F.2d 236, 238 (3d Cir. 1958).

■■ It is suggested that the construction of "enemy" we adopt, and which has the result of enabling the United States to retain appellant's property without compensation, raises constitutional doubts under the Fifth Amendment. It is urged, therefore, that we should adopt a more limited construction which would preclude the confiscation of appellant's property. If, however, we are right in the reasons we have advanced in support of the construction we give the Act—that is, the efficacy of this construction in enabling the purposes of the Act to be fulfilled—then the same reasons remove the constitutional doubts. The constitutionality of confiscating enemy property in carrying out the war powers of course is not questioned.[5] A reasonable exercise of this aspect of the war powers permits the Unit-

5. Denying a person recovery of seized and vested property is not a deprivation of property without due process when the claimant is found to be an enemy.

"There is no constitutional prohibition against confiscation of enemy properties." United States v. Chemical Foundation, Inc., 272 U.S. 1, 11, 47 S.Ct. 1, 5,

ed States to reach property located within its borders which was available to or whose owner was under the control of the enemy while resident within occupied territory. To require as a constitutional matter that the property be actually vested during the occupation or before the end of hostilities would create a very substantial limitation upon the economics of warfare.

We are cited to no precedent which holds with appellant's constitutional probings in the circumstances of the present case. The case of Guessefeldt v. McGrath, 342 U.S. 308, 318, 72 S.Ct. 338, 344, 96 L.Ed. 342, turned on the construction to be given "resident within" Germany. While the Court points out that "friendly aliens are protected by the Fifth Amendment requirement of just compensation," citing Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473, the Court found that the claimant never came within the definition of an enemy. It does not seem to us that this decision requires us to hold that one who concededly acquired, with respect to its property, enemy status during the enemy occupation of the Netherlands, under whose laws it was then incorporated, lost that status, with respect to its property, because the property was not vested while the occupation continued. This would be inconsistent with the purposes of the Act as gathered from its own text and with the congressional intention as expressed in the Joint Resolution of October 19, 1951.

The only reliance for consent of the United States to be sued in this case is section 9(a) of the Act. Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478; Bank Voor Handel En Scheepvaart, N. V. v. Kennedy, supra; Tiedemann v. Brownell, 96 U.S.App.D.C. 9, 222 F.2d 802. Since that section does

not cover the case, and this suit is in substance, though not in name, one against the United States to which it has not consented, the District Court properly awarded judgment for appellee. See Bank Voor Handel En Scheepvaart, N. V. v. Kennedy, supra. It goes without saying that this carries no possible implication of unfriendliness to the Netherlands. It rests solely on a technical enemy status acquired by appellant under the Trading with the Enemy Act by reason of the enemy occupation of the Netherlands and appellant's incorporation therein.

A further matter is noted. Before filing the instant suit in the District Court under section 9(a) appellant had applied to the Attorney General under the provisions of section 32(a) [6] of the Act for discretionary administrative relief permitted by that section to technical enemies who could not qualify to sue under section 9(a). In response to the application appellee's predecessor advised appellant in writing as follows:

"Enclosed is the Order disallowing the above-numbered claim.

"For your information, it is the present practice of this Office, except in cases where a claim is clearly entitled to allowance, to remit the claimant whose right to sue is not barred by lapse of time to his remedy in court and thus avoid the possible delay and expense of a double set of hearings. Such procedure is authorized by an amendment to the Rules of Procedure for Claims of this Office, effective April 16, 1957. * * *

"Under the provisions of Section 33 of the Trading with the Enemy Act * * * a timely suit may be instituted under Section 9(a) of the Act for return of the property claim-

71 L.Ed. 131; Stoehr v. Wallace, 255 U.S. 239, 245, 41 S.Ct. 293, 65 L.Ed. 604; Uebersee Finanz-Korporation v. Brownell, 133 F.Supp. 615, 620 (D.D.C. 1955), aff'd sub nom. Von Opel v. Brownell, 100 U.S.App.D.C. 341, 244 F. 2d 789, cert. denied, 355 U.S. 878, 78 S.

Ct. 141, 2 L.Ed.2d 108. And see Cummings v. Deutsche Bank, 300 U.S. 115, 120–121, 57 S.Ct. 359, 81 L.Ed. 545.

6. 60 Stat. 50 (1946), as amended, 50 U.S.C.Appendix, § 32(a), 50 U.S.C.A.Appendix, § 32(a).

ed in the event you are dissatisfied with the administrative action taken on your claim, and the enclosed order of disallowance does not prejudice in any way your right to sue."

See also 290 F.2d 373.

■ On the basis of the foregoing appellant contends that the Government may not in equity and good conscience claim that appellant is ineligible to sue under section 9(a) for any reason other than one which would render it ineligible as a claimant under section 32(a). But the question before the District Court was one of jurisdiction. Whatever relief, if any, appellant may seek on the basis of the previous disallowance of its application under section 32(a), the District Court was without jurisdiction of the complaint in the present case. In this situation we remand for dismissal of the complaint. Schilling v. Rogers, supra; Tiedemann v. Brownell, supra.

It is so ordered.