**Alma Helm AGAJAN et al., Appellants,**

v.

**Ramsey CLARK, Attorney General of the United States, Appellee.**

**No. 20520.**

United States Court of Appeals
District of Columbia Circuit.

Argued March 8, 1967.

Decided June 30, 1967.

Mr. A. Noble McCartney, Washington, D. C., for appellants.

Mr. Bruno A. Ristau, Atty., Dept. of Justice, with whom Messrs. David G. Bress, U. S. Atty., and Morton Hollander,

Atty., Dept. of Justice, were on the brief, for appellee.

Before FAHY,* BURGER and McGOWAN, Circuit Judges.

FAHY, Circuit Judge:

■ Appellants filed complaint in the District Court against the Attorney General [1] as successor to the Alien Property Custodian. They allege they are non-enemy shareholders of Helm Bros. Ltd., a corporation of the United Kingdom, Hong Kong. Certain of its assets were vested December 8, 1950, by appellee's predecessor as assets of an enemy as that term is defined in the Trading with the Enemy Act, 50 U.S.C. App. § 2. The vesting order set forth as the corporation's last known address and principal place of business Yokohama, Japan, and stated the corporation was a national of a "designated enemy country (Japan)." Hong Kong was occupied by Japan on or about December 25, 1941. The corporation thus became an "enemy" within the meaning of the Act. N. V. Handelsbureau La Mola v. Kennedy, 112 U.S. App.D.C. 92, 299 F.2d 923, cert. denied, 370 U.S. 940, 82 S.Ct. 1582, 8 L.Ed.2d 808.

On July 22, 1951, the corporation pursuant to Sections 32(a) (2) (E) and 9 (a) of the Act, filed notice of claim for return of the vested property. The Custodian dismissed the claim thirteen years later, July 22, 1964.

On October 8, 1965, there was filed with the President of the United States an application on behalf of the 1941 stockholders of the corporation "and their successors in interest who were not enemies or allies of enemies for return of their pro-rata share of the vested assets." Since the President had delegated his powers and duties under the Act to the Alien Property Custodian,[2] and thereafter these powers and duties

---

* Circuit Judge Fahy became Senior Circuit Judge April 13, 1967.

1. This suit was originally brought against Nicholas deB. Katzenbach, Attorney General, and on appeal his successor, Ramsey Clark, was substituted. D.C.Cir.R. 28 (b).

2. Exec.Order No. 9095, 7 Fed.Reg. 1971, March 11, 1942, 50 U.S.C. App. § 6.

were transferred to the Attorney General,[3] the stockholders' application was referred to the Attorney General. The Attorney General on October 27, 1965, denied the application as untimely. During November 1965 thirty-three of the same shareholders also filed individual notices of claims with the Office of Alien Property. There followed this suit of appellant shareholders, in which they assert their non-enemy character and also that as shareholders they have equitable interests in the vested assets of the corporation.

The Attorney General moved to dismiss the suit, contending the District Court lacked jurisdiction due to the shareholders' failure to file a timely notice of claim prior to commencing suit. The District Court granted the motion, dismissing the cause with prejudice.

■ Appellants contend that as non-enemy shareholders they had separate interests in the corporate assets which could have been returned to them under the reasoning of Kaufman v. Societe Internationale, 343 U.S. 156, 160, 72 S.Ct. 611, 96 L.Ed. 853. We need not consider this contention. Their suit was properly dismissed in any event unless the notice of claim filed by the corporation is construed as if it were a notice of claim filed by them. The first sentence of Section 33 of the Act provides,

> No return may be made pursuant to section 9 or 32 * * * unless notice of claim has been filed * * * in the case of any property or interest acquired by the United States on or after December 18, 1941, not later than one year from February 9, 1954, or two years from the vesting of the property or interest in respect of which the claim is made, whichever is later.

Appellants as shareholders filed no notice of claim within the period thus prescribed. They rely upon the notice filed July 22, 1951 by the corporation. This was not a notice of claim of these appellants. It did set forth details respecting all the corporation's shareholders, with their names and addresses, nationalities and percentages of ownership. But it would overstrain the structure and language of the Act to construe this notice as one filed by the shareholders. Neither in the language of the Act nor elsewhere is there evidence of an intention on the part of Congress that a corporate entity should be considered to be identical with the individual entities who are its shareholders.

■ Appellants point to the fact that on October 8, 1965, as we have stated, they filed an application to the President, under Section 9(a) of the Act, which was referred to the Attorney General, who denied it as untimely on October 27, 1965. This application does not help appellants' case; it does not dispense with the requirement that a notice of claim shall have been previously filed within time. The scheme of the Act, for obtaining return of vested property, is for such a notice to be filed in the case of property vested on or after December 18, 1941, not later than February 9, 1955, or two years from the vesting, whichever is later. Only when this has been done may application be made to the President for return of the property. And if we are right in our view that the corporation's notice of claim was not that of these shareholders, their application to the President was of no avail.

■ We now consider whether provisions of the Act authorizing suits for return of property were complied with and, if so, whether this obviated the necessity of a timely notice of claim. Section 9 provides that if the President shall not order return of property within sixty days after application to him is made, or if the claimant "shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity * * * to establish the interest, right, title, or debt so claimed." It is sufficient to point out that this provision for suit is conditioned upon the filing of a notice of claim. Only upon compliance

---

3. Exec.Order No. 9788, 11 Fed.Reg. 11981, October 14, 1946, 50 U.S.C. App. § 6.

with this condition is one brought within the class of claimants who are entitled either to apply to the President or to sue.[4] The second sentence of Section 33, to pursue the matter further, provides,

> No suit pursuant to section 9 * * * may be instituted after April 30, 1949, or after the expiration of two years from the date of the seizure by or vesting in the Alien Property Custodian, as the case may be, of the property or interest in respect of which relief is sought, whichever is later, but in computing such two years there shall be excluded any period during which there was pending a suit or claim for return pursuant to section 9 or 32(a) hereof * * *.

Deducting from the period December 8, 1950, when the vesting order was made, to November 30, 1965, when the shareholders' suit was filed, the period any claims were pending—July 22, 1951 to July 22, 1964 (the corporate claim) and October 8, 1965 to October 27, 1965, or possibly to November 30 as to thirty-three of the appellants (the shareholders' claims)—we arrive at less than two years;[5] so that were the corporation's claim to be considered that of appellants, the pendency of the claims would save the timeliness of appellants' suit. However, the language of the Act excluding from the two-year period the time a claim [6] was pending refers to a claim for the same interest involved in the suit which is filed; and we have expressed our opinion that the suit of these shareholders is not for the same interest involved in the claim of the corporation; so that the corporation's claim did not serve to toll the time within which the shareholders were required to sue.

We have considered, with the aid of memoranda from the parties, whether Honda v. Clark, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244, should lead to a different result. There, in the circumstances of the case, it was held that applicable equitable principles required a conclusion, with respect to certain creditors [7] having claims against enemy assets vested under the Act, that the pendency of the suit of one of the creditors to determine whether the value of the claims was to be calculated at the rate of exchange at the time of vesting or at the inflated post-war rate, tolled the time within which the suits of these other creditors need be filed. The situation of appellants is not in all respects dissimilar to those involved in Honda; for example, it is true here as it was there that the success of the claimants would not adversely affect the United States Treasury. "The only persons who might eventually benefit from the surplus are those general beneficiaries of the War Claimants Fund into which any surplus is deposited." Honda, supra 386 U.S. at 498, 87 S.Ct. at 1195. But the dissimilarities prevent our case from being controlled by Honda. The creditors there were depositors in a bank asserting rights under Section 34 of the Act enacted in 1946 in response to the Court's decision in Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165, which "allowed nonenemy creditors of former owners of vested property to bring suit under a World War I statute, [Section 9(a) of the Act] and recover directly out of vested assets." Honda, supra at 487, 87 S.Ct. at 1190. The Court carefully analogized the situation of these depositors to creditors pursuing claims under the Bankruptcy Act, 11 U.S.C. § 93(n). Legislative and judicial history is cited in support of the analogy. Under the Bankruptcy Act failure of a creditor to file his claim within a prescribed

---

4. We think the timeliness requirement of the first sentence of Section 33 applies to the notice of claim required by Section 9 to be filed before suit, thus excluding those appellants who unseasonably filed notices of claims during November 1965.

5. 14 years, 11 months, 22 days, less the total of 13 years, 1 month and 22 days, equals 1 year and 10 months.

6. No suit was pending.

7. The claimants referred to were depositors of a bank whose funds were vested.

time did not bar recovery of assets of the bankrupt remaining in the hands of the trustee. The Court concluded, "the statutory purpose is best served by invoking the equitable doctrine of tolling to preserve petitioners' action in which they seek payment on the same basis as that accorded the claimants" who timely sued to obtain adjudication of the rate of exchange issue. *Honda, supra* 386 U.S. at 500, 87 S.Ct. at 1196.

We are not at liberty to invoke here an equitable tolling encompassing the time the corporation's claim was pending. In the first place all claimants in *Honda* were creditors; that is, they were in the same category. There was no distinction between them such as exists between a corporation and a non-enemy segment of its shareholders. In the second place, the analogy to the Bankruptcy Act does not apply because the time periods for filing claims under that Act, and under Section 34 involved in *Honda,* were for the benefit of the claimant creditors, whereas here the periods of limitations are for the purpose of expediting administration of the Act and closing out its operations. Moreover, for all that appears from the record appellants, from July 22, 1951 to July 22, 1964, deliberately chose, in contrast with the situation in *Honda,* to place their fate with that of the corporation. It was only when the latter's claim failed—when the corporation did not succeed in freeing itself of enemy character—that appellants separated themselves from the corporation.[8]

The periods of limitations applicable to those who seek return of vested property apply to appellants. Though the argument that the corporation's claim covered their shareholding interests has plausibility, we do not think that claim can be said to be a claim for the shareholders as such. It was for the corporation. It was not simply a claim for the interests of these non-enemy shareholders, but for all the vested corporate assets. Though it covered the total, and therefore the parts, it was not for the separate parts.

In the end our problem is to interpret the Act as we consider Congress intended. With that in mind we think appellants failed in timely fashion to pursue whatever remedies, if any, the Act afforded them.

Affirmed.

8. Kaufman v. Societe Internationale, 343 U.S. 156, 72 S.Ct. 611, 96 L.Ed. 853, which appellants contend establishes their rights to a pro-rata share of the vested corporate assets, was decided April 7, 1952.